[No. 5146–1. Division One. January 16, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. BENEDICT
KAZUO HATTORI, *Appellant.*

*Scott Smouse,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Philip Y. Killien, Deputy,* for respondent.

CALLOW, J.—Benedict Kazuo Hattori appeals from a judgment and sentence entered on a jury verdict finding him guilty of robbery while armed with a deadly weapon and firearm. He contends that the trial court erred (1) in refusing to dismiss the information on the ground that he was not brought to trial within 60 days of his preliminary appearance as required by CrR 3.3, and (2) in refusing to instruct the jury that an unloaded gun is not a firearm pursuant to RCW 9.41.025.

The facts are undisputed. On October 8, 1974, an information was filed charging Hattori with having committed robbery on October 5, 1974. Although a warrant was issued for Hattori's arrest on October 8, it was not until May 27, 1976, that he was arrested in San Francisco, California. On June 4, 1976, he signed a waiver of extradition to the state of Washington, and on June 18, 1976, he was booked in the King County jail. On July 6, 1976, an order was entered

granting Hattori's request for a new attorney, delaying proceedings by 6 days. On August 18, 1976, Hattori moved to dismiss the charges, contending that his appearance in California to waive extradition to Washington commenced the running of his right to a speedy trial, and that under CrR 3.3(c), more than 60 days had elapsed since his preliminary appearance. This motion was denied, and following a jury trial wherein the prosecution stipulated that the weapon used in the robbery was not loaded, Hattori was found guilty of robbery while armed with a deadly weapon and firearm.

The defendant initially contends that the period in California subsequent to his signing of a waiver of extradition should be included for purposes of the speedy trial rule. He bases his argument on CrR 3.3(f), which states:

**(f) Absence of Defendant.** If and in event the defendant is *absent and thereby unavailable* for trial or for any pretrial proceeding at which his presence is required, the time period specified in section (b) or (c) shall start to accrue anew upon defendant's being actually present in the county wherein the criminal charge is pending, and his presence appearing upon the record of the court.

(Italics ours.) He contends that he was not "absent and thereby unavailable" subsequent to his waiver of extradition in California. We disagree.

CrR 3.3(d)(5), as initially adopted, excluded the period of "[d]elay resulting from the absence of the defendant." The speedy trial rule was amended effective May 21, 1976, to provide that if a defendant is "absent and thereby unavailable," the time periods accrue anew upon his actual presence in the county wherein the criminal charge is pending. CrR 3.3(f). In *State v. Williams*, 87 Wn.2d 916, 920, 557 P.2d 1311 (1976), the court stated:

The *Washington Proposed Rules of Criminal Procedure* (1971) indicate that the *ABA Standards Relating to Speedy Trial* § 2.3 (Approved Draft, 1968) served as a basis for the section. The American Bar Association draft indicated "[a] defendant should be considered absent

whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence."[3]

[3]*ABA Standards Relating to Speedy Trial* § 2.3 (Approved Draft, 1968) also noted "[a] defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial." The Washington rule relevant to this case allows an exclusion only on the basis of absence and not on unavailability. The rule has been amended effective May 21, 1976, to include the unavailability element. The defendant must now be both "absent and thereby unavailable." CrR 3.3(f).

We note an inconsistency between CrR 3.3(f), which requires that a defendant be "absent and thereby unavailable," and section 2.3(e) of the *ABA Standards,* which excludes the delay resulting from the "absence or unavailability" of the defendant. In the definitions found in the *ABA Standards,* a defendant is unavailable when his whereabouts are known, while a defendant is absent when his whereabouts are unknown. The terms absent and unavailable are mutually exclusive as defined; a defendant cannot be both "absent" *and* "unavailable" as those terms are defined in the *ABA Standards Relating to Speedy Trial.* Since CrR 3.3(f) was based on section 2.3 of the *ABA Standards Relating to Speedy Trial,* we interpret "absent and thereby unavailable" to mean that the defendant must be absent *or* unavailable.

 Unlike the *ABA Standards Relating to Speedy Trial,* the Washington speedy trial rule does not have a specific provision relating to the prosecutor's obligation to seek a defendant's presence for trial when the defendant is in custody in another jurisdiction:

Prosecutor's obligations; notice to and availability of prisoner.
To protect the right to speedy trial of a person serving a term of imprisonment either within or without the

jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact, that:

(a) If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

(b) If an official having custody of such a prisoner receives a detainer, he must promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs such official that he does demand trial, the official shall cause a certificate to that effect to be sent promptly to the prosecuting attorney who caused the detainer to be filed.

(c) Upon receipt of such certificate, the prosecuting attorney must promptly seek to obtain the presence of the prisoner for trial.

(d) When the official having custody of the prisoner receives from the prosecuting attorney a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that prosecuting attorney (subject, in cases of interjurisdictional transfer, to the traditional right of the executive to refuse transfer and the right of the prisoner to contest the legality of his delivery).

*ABA Standards Relating to Speedy Trial* § 3.1 (Approved Draft, 1968). Further, section 3.2 of the *ABA Standards Relating to Speedy Trial* provides:

Computation of time.

The time for trial of a prisoner whose presence for trial has been obtained while he is serving a term of imprisonment should commence running from the time his presence for trial has been obtained, subject to all the excluded periods listed in section 2.3. If the prosecuting attorney has unreasonably delayed (i) causing a detainer to be filed with the custodial official, or (ii) seeking to obtain the prisoner's presence for trial in lieu of filing a detainer or upon receipt of a certificate of demand, such

periods of unreasonable delay should also be counted in ascertaining whether the time for trial has run.

Even though sections 3.1 and 3.2 of the *ABA Standards* were not adopted in Washington, a defendant cannot be considered "unavailable" for purposes of CrR 3.3(f) if his whereabouts are known and reasonable efforts are not taken to obtain his presence in the county wherein the charges are pending. If the State fails to exercise reasonable efforts in obtaining the defendant's presence, the time periods shall not "accrue anew" within the meaning of CrR 3.3(f). In determining whether the State has acted reasonably, the time necessary for transporting the defendant back to this state and administrative delays caused by the foreign jurisdiction, as well as whether the defendant waives extradition, are important factors to be considered.

Here, Hattori was "absent" from the jurisdiction from the filing of the information until his arrest in California on May 27, 1976, because his whereabouts were unknown. Following his arrest, he was unavailable because his presence for trial in Washington could not be obtained. Although he waived extradition on June 4, 1976, and was transported back to this state and booked in King County jail on June 18, 1976, there is no evidence that the State did not make reasonable efforts to seek his return to the state of Washington subsequent to the waiver of extradition; the 2–week delay between the time of the waiver of extradition and his return to Washington cannot be considered unreasonable. Thus, under CrR 3.3(f), Hattori's right to speedy trial accrued upon his presence and appearance in King County. Under the facts of this case, the defendant was afforded a speedy trial as required by CrR 3.3.

Hattori also contends that under RCW 9.41.025[1] an

---

[1] RCW 9.41.025 reads in part:

"Committing crime when armed—Penalties—'Inherently dangerous' defined—Resisting arrest. Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

unloaded gun is not a firearm, and that pursuant to stipulation that the weapon involved in the robbery was not loaded, it was error to refuse to instruct the jury that:

As used in these instructions the words deadly weapon includes any gun.

The word firearm does not include an unloaded gun.

We disagree.

■■ We have consistently held that under RCW 9.95-.040, a pistol or other firearm is a deadly weapon and the prosecution is not required to prove that it was loaded. *See State v. Chisholm*, 7 Wn. App. 279, 499 P.2d 81 (1972); *State v. Newman*, 4 Wn. App. 588, 484 P.2d 473 (1971). Although the term "firearm" is not specifically defined in RCW 9.41.010,[2] a "deadly weapon" is defined in RCW 9.95-

---

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

"(2) For a second offense, or if, in the case of a first conviction of violation of any provision of this section, the offender shall previously have been convicted of violation of the laws of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than seven and one-half years, which sentence shall not be suspended or deferred;

"(3) For a third or subsequent offense, or if the offender shall previously have been convicted two or more times in the aggregate of any violation of the law of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than fifteen years, which sentence shall not be suspended or deferred;

"(4) Misdemeanors or gross misdemeanors categorized as 'Inherently Dangerous' as the term is used in this statute means any of the following crimes or an attempt to commit any of the same: Assault in the third degree, provoking an assault, interfering with a public officer, disturbing a meeting, riot, remaining after warning, obstructing firemen, petit larceny, injury to property, intimidating a public officer, shoplifting, indecent liberties, and soliciting a minor for immoral purposes."

[2]RCW 9.41.010 reads:

"Terms defined. 'Short firearm' or 'pistol' as used in RCW 9.41.010 through 9.41.160 means any firearm with a barrel less than twelve inches in length.

"'Crime of violence' as used in RCW 9.41.010 through 9.41.160 means any of the following crimes or an attempt to commit any of the same: Murder, man-

.040 to include the term "firearm."[3] Both RCW 9.41.025 and 9.95.040 have the similar legislative purpose of enhancing the penalties imposed upon a defendant who commits a felony while armed with a dangerous instrument. Under RCW 9.95.040, the discretion of the Board of Prison Terms and Paroles is restricted if the trier of fact makes a finding that the defendant committed the felony while armed with a dangerous weapon. *See State v. Coma,* 69 Wn.2d 177, 417 P.2d 853 (1966); *State v. Smith,* 11 Wn. App. 216, 521 P.2d

---

slaughter, rape, riot, mayhem, first degree assault, second degree assault, robbery, burglary and kidnaping."

[3]RCW 9.95.040 reads in part:

"Board to fix duration of confinement—Minimum terms prescribed for certain cases. Within six months after the admission of a convicted person to the penitentiary, reformatory, or such other state penal institution as may hereafter be established, the board of prison terms and paroles shall fix the duration of his confinement. The term of imprisonment so fixed shall not exceed the maximum provided by law for the offense of which he was convicted or the maximum fixed by the court where the law does not provide for a maximum term.

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) . . .

"The words 'deadly weapon,' as used in this section include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, and any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.
" . . .

"(4) Any person convicted of embezzling funds from any institution of public deposit of which he was an officer or stockholder, the duration of confinement shall be fixed at not less than five years.

"Except when an inmate of the reformatory, penitentiary or such other penal institution as may hereafter be established, has been convicted of murder in the first or second degree, the board may parole an inmate prior to the expiration of a mandatory minimum term, provided such inmate has demonstrated a meritorious effort in rehabilitation and at least two–thirds of the board members concur in such action: *Provided,* That any inmate who has a mandatory minimum term and is paroled prior to the expiration of such term according to the provisions of this chapter shall not receive a conditional release from supervision while on parole until after the mandatory minimum term has expired."

1197 (1974). Under RCW 9.41.025, the trial court's discretion to suspend or defer sentence is limited if a special finding is entered by the trier of fact that the defendant was armed with a firearm. *See State v. Thompson,* 88 Wn.2d 60, 558 P.2d 245 (1977); *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972); *State v. Butterfield,* 12 Wn. App. 745, 529 P.2d 901 (1974). Although the two statutes limit the discretion of different entities, because of their similar legislative purpose, they should be interpreted consistently whenever possible.[4] There is no indication that the legislature intended an unloaded gun to be a firearm for purposes of the deadly weapon statute, RCW 9.95.040, and an unloaded gun not to be a firearm for purposes of the firearm statute, RCW 9.41.025. In *State v. Edwards,* 17 Wn. App. 355, 563 P.2d 212 (1977), an instruction was approved which defined the term "firearm" as a "gun, pistol, revolver or other weapon from which a projectile is fired by gunpowder." The definition of the term "deadly weapon" includes a pistol or other firearm. There is no requirement under these definitions that a gun be loaded. *See generally* Annot., 79 A.L.R.2d 1412 (1961).

This conclusion is supported by sound policy. The apprehension in the mind of the victim of a crime committed by a defendant armed with a gun is the same whether the gun is loaded or unloaded. *See People v. Williams,* 6 Mich. App. 412, 149 N.W.2d 245 (1967). In addition, an unloaded gun can easily be loaded during the commission of the crime, and, thus, a defendant armed with an unloaded gun has the same potential for inflicting violence as a defendant armed with a loaded gun. *See State v. Hansen,* 20 Utah 2d 189, 436 P.2d 227 (1968). In interpreting RCW 9.41.025 in light of the legislative purpose in attempting to deter the commission of violent crimes, we

---

[4]In *State v. Smith,* 11 Wn. App. 216, 225, 521 P.2d 1197 (1974), we discussed the apparent inconsistency between the two statutes.

conclude that a gun, whether loaded or unloaded, is a firearm. Accordingly, the trial court did not err in refusing to give Hattori's proposed instruction.

Affirmed.

JAMES and WILLIAMS, JJ., concur.