[No. 39739-7-I. Division One. March 23, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. MATTHEW CHARLES STOCKTON, *Appellant*.

[90]*See* RCW 42.36.010, .030.

36

*Oliver R. Davis* of *Washington Appellate Project*, for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine* and *Charles F. Blackman, Deputies,* for respondent.

AGID, J. — Matthew Stockton appeals his conviction for unlawful possession of a firearm, arguing the trial court improperly permitted the prosecutor to question him about unrelated drug use. The State cross-appeals, contending the trial court erred by instructing the jury on Stockton's necessity defense. Because Stockton's prior drug use was inadmissible and the testimony unduly prejudiced the necessity defense on which the trial court properly instructed the jury, we reverse his conviction.

## FACTS

On June 23, 1996, Gary Pounds looked out the window of his Everett apartment and saw three people fighting in the alley across the street. He watched briefly and returned to watching television. About 10 minutes later, he heard more yelling and fighting, returned to the window and saw approximately 12 people involved in a fight in the street outside his home. Pounds put his shoes on, told his roommate to call the police and ran downstairs. When he got outside, he saw a gun fall to the ground near one of the combatants' feet. He didn't see where the gun came from, but said the man who was being beaten by the crowd picked the gun up by the butt, pointed it toward the crowd and

ran away when they continued to beat him.[1] Pounds then went back inside to make sure the police were coming.

K-9 officer Christina Hughes responded to the call shortly after patrol officers. The officers told Hughes the suspect with the weapon had fled and they were searching the area for him. Hughes and her dog joined the search. The dog soon began to "indicate" by barking loudly near some bushes in the area. As it was barking, Stockton yelled out from inside the bushes, and Hughes brought him out and placed him in her patrol car. The dog continued to bark and dig into the leaves under the bushes, so Hughes reached into the bushes and pulled out a loaded and cocked gun.

Stockton testified he was walking from his apartment to the Time Out Tavern to play pool when a man approached him and asked him what he wanted. Stockton believed the man was trying to sell him drugs. He told him he did not want anything and continued walking. Two other men approached him, asked him if he had any money and put their hands inside his pockets. He punched one of the men, and the others began punching him on the head and body. After several minutes, he saw a gun in someone's hand and grabbed it by the barrel. The gun fell to the ground. He picked it up and pointed it in the direction of the crowd for a brief time before he ran away. He hid in some bushes behind an apartment building, cocked the gun and listened for voices and footsteps.

As he hid, Stockton heard people talking and believed they were the crowd that attacked him. After a few minutes, he heard police radios. When he realized the police were in the area, he dropped the gun and covered it with some leaves. He came out of the bushes when Hughes ordered him to and told the officers he was hiding from a crowd that had beat him up. He did not tell her about the gun because he was a convicted felon and he knew it was illegal for him to possess it.

---

[1]Although one of the officers at the scene testified Pounds told him Stockton pointed the gun at an unidentified female, Pounds denied making this statement at trial.

After Pounds identified Stockton as the person who picked up the gun during the fight, Stockton was arrested and charged with unlawful possession of a firearm. Before trial, Stockton stipulated to his prior conviction for a serious offense but moved to exclude testimony about his prior convictions.[2] The court ruled that only his prior convictions for taking a motor vehicle and burglary were admissible. He admitted to these convictions on direct examination.

Stockton testified he believed the men who attacked him were trying to sell him drugs. On cross-examination, the prosecutor asked Stockton if he was afraid of the men. Stockton replied that he was and that he was not interested in "what they were talking about." The prosecutor then asked, "So you have some knowledge of how to purchase drugs on the street?" Defense counsel objected to the question as irrelevant and prejudicial. The trial court overruled the objection. Stockton admitted he had bought drugs on the street but testified that he had not bought drugs in the previous two years and never in Everett.

In closing argument, Stockton's attorney admitted his client possessed the gun but argued his possession was excused by necessity. The court instructed the jury on the necessity defense over the State's objections. The State argued Stockton started the fight himself by walking down the street waving a weapon. The jury found Stockton guilty of unlawful possession of a firearm, and the court sentenced him to 116 months.

## DISCUSSION

Stockton contends the trial court erred when it allowed the prosecutor to question him about his previous drug use because the evidence was inadmissible and the court had specifically excluded testimony about his prior violation of the Uniform Controlled Substances Act (VUCSA) conviction. The State counters that Stockton opened the door

---

[2]Stockton has three convictions for taking a motor vehicle without permission, three for burglary and possession of stolen property, one for malicious mischief and one for possession of a controlled substance.

to the evidence on direct examination and it was relevant to place the incident in context.

■ Otherwise inadmissible evidence is admissible on cross examination if the witness "opens the door" during direct examination and the evidence is relevant to some issue at trial.[3] For example, when a witness testifies to his good character on direct examination, the opposing party is entitled to make further inquiries on the subject during cross-examination even though that evidence would otherwise be inadmissible.[4] But a passing reference to a prohibited topic during direct does not open the door for cross-examination about prior misconduct.[5] In *Avendano-Lopez*, the defendant mentioned that he had been released from jail in his direct testimony. On cross-examination, the prosecutor questioned him about prior drug sales, arguing the defendant opened the door by admitting he had been in jail. This court held that the reference to jail did not open the door for the prosecutor to introduce evidence of prior misconduct.[6] There is no material difference between that case and this one. Stockton's testimony that he thought the men were trying to sell him drugs was no more than a passing reference to any knowledge he may have had about drugs. It is equally likely that someone who had never purchased drugs would understand an approach like the one Stockton described to involve drugs. As such, it did not open the door to testimony about his prior drug use.

The State also argues Stockton's claim that the men wanted to sell him drugs placed the attack in context and it was entitled to ask further questions about that context. But the prosecutor's question did not focus on the context of the altercation. She did not ask how Stockton knew the men were trying to sell drugs. Rather, she asked only

[3]*State v. Tarman*, 27 Wn. App. 645, 650-52, 621 P.2d 737 (1980).

[4]*State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

[5]*State v. Avendano-Lopez*, 79 Wn. App. 706, 715, 904 P.2d 324 (1995), *review denied*, 129 Wn.2d 1007 (1996).

[6]*Id.* at 713-14.

whether Stockton had bought drugs before. That question did not counter Stockton's testimony that the men were trying to sell him drugs or cast doubt on his claim that they tried to rob him when he walked away. Had she asked a permissible question like the one framed here, and had Stockton denied knowing about drugs, the prosecutor could have impeached that denial with his prior drug use. But Stockton never put his familiarity with drugs in issue.

 The prosecutor's question elicited testimony only about Stockton's prior drug use, evidence which was only marginally relevant to any issue at trial and was highly prejudicial.[7] Stockton admitted he possessed the gun and stipulated he was a convicted felon, so the only issue at trial was Stockton's necessity defense.

To establish this defense, Stockton had to show,

> (1) he was under unlawful and present threat of death or serious injury, (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct, (3) he had no reasonable alternative, and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.[8]

Stockton's prior drug use does not tend to prove or disprove any element of the defense. It did not rebut Stockton's testimony that the men approached him unsolicited and tried to rob him when he tried to walk away from them (element 1); that he had no alternative to picking up the gun (element 3); or that there was a cause and effect relationship between his keeping the gun and avoiding a continued assault (element 4). But the impermissible evidence did allow the jury to infer that, because Stockton was a drug user, the altercation was a drug deal gone bad. As such, it allowed the State to negate the second element of the necessity defense; *i.e.*, if he was buying drugs, he had put himself in the situation where he would do something ille-

---

[7]ER 403.

[8]*State v. Jeffrey*, 77 Wn. App. 222, 225, 889 P.2d 956 (1995).

gal. The drug evidence was also highly prejudicial. "Evidence of drug use on other occasions . . . is generally inadmissible on the ground that it is impermissibly prejudicial."[9] The prejudice was particularly significant here because the evidence tended to negate an element of Stockton's defense. As such, it should have been excluded under ER 403.

The State also contends that neither ER 608 nor ER 609 prohibit the testimony because the prosecutor's question did not impeach Stockton and did not elicit evidence of prior misconduct. Although the prosecutor did not refer directly to Stockton's prior conviction or drug use, her question was clearly intended to elicit an admission that he was a drug user. It was directed at prior misconduct and is therefore impeachment governed by ER 608.

Under ER 608, evidence of prior misconduct is admissible only if probative of a witness's character for truthfulness.[10] Drug possession and use are not probative of truthfulness because they have little to do with a witness's credibility.[11] This is particularly true if the jury has heard evidence about other convictions which are per se probative of truthfulness.[12] Stockton admitted to prior convictions, and the additional evidence about his prior drug use was unduly prejudicial and cumulative.

[9]State v. Tigano, 63 Wn. App. 336, 344-45, 818 P.2d 1369 (1991), review denied, 118 Wn.2d 1021 (1992).

[10]ER 608 provides in part:

(b) **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[11]State v. Benn, 120 Wn.2d 631, 651, 845 P.2d 289 (ER 608), cert. denied, 510 U.S. 944 (1993); State v. Wilson, 83 Wn. App. 546, 553-54, 922 P.2d 188 (1996) (ER 609), review denied, 130 Wn.2d 1024 (1997).

[12]State v. Millante, 80 Wn. App. 237, 247, 908 P.2d 374 (1995), review denied, 129 Wn.2d 1012 (1996).

■ Having concluded admitting the evidence was error, we must determine whether it was harmless. An error is harmless when, in light of all the evidence presented at trial, it was unlikely to have affected the jury's verdict because the State's case was believable and its evidence corroborated.[13] Pounds did not see Stockton with the gun before he picked it up. His testimony was consistent with Stockton's claim that he knocked the gun from another person's hand and picked it up in order to escape from the melee. He also corroborated Stockton's testimony that the crowd continued to beat him as he tried to break away and that he ran away as soon as he was able. Stockton admitted he hid in the bushes and dropped the gun when officers approached because he knew it was illegal for him to possess it. But he also testified that he emerged from the bushes immediately after officers ordered him out. The officers agreed that he was cooperative when arrested. There was no evidence at all that Stockton had the gun before the melee began. Viewed as a whole, the State's evidence is not strong enough for us to conclude that the error did not affect the jury's verdict.

## Cross-Appeal

■ ■ The State cross-appeals, contending the trial court erred by instructing the jury on Stockton's necessity defense. In *State v. Jeffrey*,[14] Division III held the necessity defense applies to unlawful possession of a firearm, and a defendant is entitled to an instruction on the defense if he demonstrates facts supporting the elements of the defense.[15] The State argues *Jeffrey* was wrongly decided because the Legislature intended that unlawful possession of a weapon be a strict liability crime with no defenses. Alternately, it contends that, even if the defense is available, Stockton failed to make a prima facie showing of the facts entitling

---

[13]*Id.* at 246; *State v. Padilla*, 69 Wn. App. 295, 301, 846 P.2d 564 (1993).

[14]77 Wn. App. 222, 889 P.2d 956 (1995).

[15]*Id.* at 225.

44

him to the instruction. We disagree with both arguments. The *Jeffrey* court correctly concluded that necessity is a valid defense to unlawful possession of a firearm. And under the evidence presented at trial, Stockton was entitled to a jury instruction on that defense.

Reversed.

COLEMAN and GROSSE, JJ., concur.