[No. 40861-5-I.    Division One.    February 16, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. THADDIUS X.
ANDERSON, *Appellant*.

*Elise N. Gautama* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Foerschler, Deputy*, for respondent.

KENNEDY, C.J. — Thaddius X. Anderson appeals his second degree unlawful possession of a firearm conviction, contending that the trial court erred in instructing the jury that the State is not required to prove beyond a reasonable doubt that he knew that he possessed a firearm. In addition, he maintains that the State failed to present sufficient evidence to prove beyond a reasonable doubt that the handgun was a "firearm" as defined in the unlawful possession of a firearm statute, RCW 9.41.010(1).

Knowledge of the presence of a firearm is not an element of second degree unlawful possession of a firearm. And where, as here, any rational trier of fact could have found that the handgun recovered by the police was a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder, the evidence is sufficient to support a RCW 9.41.010(1) conviction. The State's failure to test-fire the weapon and present evidence that it was immediately operable when Anderson possessed it does not alter that result. We therefore affirm the conviction.[1]

## FACTS

In August 1996, Seattle Police Officers Ron Traverso and Dorina Davis, who were in a marked patrol car, noticed a Jeep being driven without a front license plate. The officers made a U-turn and saw the driver reach under his seat from behind. The officers approached the Jeep and activated their emergency lights. As the Jeep pulled to the side of the road, Officer Davis saw the driver reach under his seat from the front.

---

[1]Anderson's remaining contentions, which we also reject, are addressed in the unpublished portion of this opinion.

The driver ultimately identified himself as Thaddius X. Anderson. After searching the Jeep, Officer Davis found a loaded semiautomatic handgun under the driver's seat. Anderson explained that the Jeep and the gun—which he claimed he did not know was present until he felt it under the seat shortly before the police stopped him—belonged to his cousin, Naquib A. Haqq.

The State charged Anderson with second degree unlawful possession of a firearm. Although no evidence was admitted at trial to indicate that the handgun was ever test-fired, Officers Traverso and Davis testified that the handgun was loaded and looked real. The gun, which displayed a serial number, was submitted to the jury as an exhibit. After a three-day trial, the jury found Anderson guilty of second degree unlawful possession of a firearm, and the trial court sentenced him within the standard range. Anderson appeals.

## I. Elements of Second Degree Unlawful Possession of a Firearm

Although the second degree unlawful possession of a firearm statute's plain language does not contain a mental element, Anderson contends that knowledge of the presence of a firearm is an implied element that the State must prove beyond a reasonable doubt. Accordingly, he argues that the trial court erred by omitting knowledge from the "to convict" instruction, and by providing an "unwitting possession" affirmative defense instruction that instructed the jury that it must find Anderson not guilty if he proved by a preponderance of the evidence that he did not know the firearm was in his possession. The State responds that second degree unlawful possession of a firearm is a strict liability offense that contains no mental element and, accordingly, that the trial court properly instructed the jury.

Under RCW 9.41.040(b), a person "is guilty of the crime of unlawful possession of a firearm in the second degree, if . . . the person owns, has in his or her possession, or has

in his or her control any firearm . . . [a]fter having previously been convicted in this state or elsewhere of [a specified] felony." A "failure to instruct the jury on every element of the crime requires automatic reversal." *City of Seattle v. Norby*, 88 Wn. App. 545, 557, 945 P.2d 269 (1997) (citing *State v. Smith*, 131 Wn.2d 258, 265-66, 930 P.2d 917 (1997)).

A. Washington Case Law

Although the second degree unlawful possession of a firearm statute, RCW 9.41.040, has been in effect since 1935, knowledge of the presence of a firearm is rarely at issue. Consequently, the issue of whether such knowledge is an implied element in this statute is one of first impression in Washington.

This court has held that knowledge that the possession is unlawful is not an element of the unlawful possession of a firearm offense. *State v. Semakula*, 88 Wn. App. 719, 726, 946 P.2d 795 (1997), *review denied*, 134 Wn.2d 1022 (1998); *State v. Reed*, 84 Wn. App. 379, 383, 928 P.2d 469 (1997). In addition, the *Semakula* court implicitly supported the State's position here—that knowledge of the presence of a firearm is not an element of the crime—by approving the affirmative defense of "unwitting possession." *Semakula*, 88 Wn. App. at 727.

In *State v. Jeffrey*, 77 Wn. App. 222, 225-26, 889 P.2d 956 (1995), this court addressed the State's argument that the defense of necessity was unavailable under the former version of this statute[2] because it was a strict liability statute. Although the court concluded that the defense was not available under the facts before it, it noted, "We are persuaded that a situation can arise that will permit necessity as a defense." *Id.* at 226-27. But the *Jeffrey* court did not address directly whether unlawful possession of a firearm is a strict liability crime.

---

[2]The former version of this statute read, "A person is guilty of the crime of unlawful possession of a short firearm or pistol, if, having been previously convicted . . . of a felony in which a firearm was used or displayed, the person owns or has in his possession any short firearm or pistol." *Jeffrey*, 77 Wn. App. at 223 n.1 (quoting former RCW 9.41.040(1)).

Then, in *State v. Stockton*, 91 Wn. App. 35, 43, 955 P.2d 805 (1998), the State argued that *"Jeffrey* was wrongly decided because the Legislature intended that unlawful possession of a weapon be a strict liability crime with no defenses." The *Stockton* court disagreed and explained, "The *Jeffrey* court correctly concluded that necessity is a valid defense to unlawful possession of a firearm." *Id.* at 44. But the *Stockton* court also did not decide if this crime is a strict liability offense.

B. Legislative Intent

▉ Courts generally disfavor criminal offenses with no requirement of a mental element. *State v. Bash*, 130 Wn.2d 594, 606, 925 P.2d 978 (1996). Nonetheless, our Legislature may create strict liability crimes. *State v. Rivas*, 126 Wn.2d 443, 452, 896 P.2d 57 (1995). If the plain language of a statute does not contain a mental element requirement, "whether a statute defines a strict liability crime is a question of statutory construction focusing on legislative intent." *State v. Groom*, 133 Wn.2d 679, 688, 947 P.2d 240 (1997). The courts do not have the authority to rewrite statutes, even if the results appear unduly harsh. *Id.* at 689.

Our Supreme Court has identified relevant factors to consider in such a determination: (1) the background rules of the common law and its conventional mens rea requirement; (2) whether the crime can be characterized as a "public welfare offense"; (3) the extent to which a strict liability reading of the statute would encompass seemingly entirely innocent conduct; (4) the harshness of the penalty; (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant's ascertaining the true facts; (7) relieving the prosecution of time-consuming and difficult proof of fault; and (8) the number of prosecutions expected. *Bash*, 130 Wn.2d at 605-06 (adopting factors (1)-(4) from *Staples v. United States*, 511 U.S. 600, 615-19, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994), and factors (5)-(8) from 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.8, at 341-44 (1986)).

In 1994, when our Legislature amended and reenacted the unlawful possession of a firearm statute, it noted "that the increasing violence in our society causes great concern for the immediate health and safety of our citizens and our social institutions." LAWS OF 1994, 1st Spec. Sess., ch. 7, § 101. It asserted that "State efforts at reducing violence must include changes in criminal penalties, reducing the unlawful use of and access to firearms[.]" *Id.* And it found "that the problem of violence can be addressed with many of the same approaches that public health programs have used to control other problems such as infectious disease, tobacco use, and traffic fatalities." *Id.*

█ To determine if our Legislature intended this statute to be characterized as regulatory, it is helpful to examine the nature of "public welfare offense" doctrines. Many regulatory offenses "result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize." *Morrissette v. United States*, 342 U.S. 246, 255-56, 72 S. Ct. 240, 96 L. Ed. 288 (1952), *quoted in Bash*, 130 Wn.2d at 607. But "despite their potential for harm, guns generally can be owned in perfect innocence." *Staples*, 511 U.S. at 611, *quoted in Bash*, 130 Wn.2d at 608. It follows that gun ownership in itself does not involve moral turpitude and is not malum in se, i.e., a wrong in itself. Consequently, the unlawful possession of a firearm is a malum prohibitum offense, i.e., "a thing which is wrong *because* prohibited." BLACK'S LAW DICTIONARY at 960 (6th ed. 1990); *see Bash*, 130 Wn.2d at 606-07 (contrasting malum in se with malum prohibitum).

█ The unlawful possession of a firearm statute reduces the danger or probability of danger that is created when a felon is in possession of a firearm by making it a punishable offense. Despite the common law preference for mental elements in crimes, the legislative findings suggest that our Legislature recognized the seriousness of the harm to the public and intended this statute to be characterized as a "public welfare offense." Further, seemingly entirely innocent conduct is not encompassed by a strict liability

reading of the statute when the affirmative defense of "unwitting possession" is available.

As for the harshness of the penalty, second degree unlawful possession of a firearm is a class C felony, punishable by 5 years imprisonment and/or a $10,000 fine. RCW 9.41.040(2)(b); 9A.20.021(c). Although the U.S. Supreme Court has suggested that a mental element should be required in statutes defining felony offenses, *Staples*, 511 U.S. at 618, our Supreme Court has departed from this rule. *See State v. Lindberg*, 125 Wash. 51, 215 P. 41 (1923), *cited in Bash*, 130 Wn.2d at 609. Notwithstanding the preference for a mental element, where, as here, our Legislature evidences its intent to create a "public welfare offense," the courts should interpret the statute in conformity with the legislative findings. *Staples*, 511 U.S. 619-20; *Groom*, 133 Wn.2d at 689.

Thus, we conclude that knowledge of the presence of a firearm is not an element of second degree unlawful possession of a firearm that the State must prove beyond a reasonable doubt. Accordingly, the trial court's "to convict" and "unwitting possession" instructions were proper.

## II. "Firearm" as defined in RCW 9.41.010(1)

Anderson contends that the evidence presented at trial was insufficient to prove that the gun police found in the Jeep was an operational "firearm." The State responds that it presented ample circumstantial evidence from which a jury could find beyond a reasonable doubt that the gun was a "firearm" as defined in RCW 9.41.010(1).

▮ RCW 9.41.010(1) defines "firearm" as "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Rempel*, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990).

Anderson contends in effect that the only "weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder" is a weapon that is both real and *operational* at the time the convicted felon possesses it. Because the weapon in this case was never test-fired, Anderson argues that the State failed to meet its burden of proving that he possessed a "firearm" as defined by law. The State responds that it need only prove that an apparent firearm such as the one at issue here is a *firearm in fact*, that is, a "real gun" and not just a gun-like object, and that the unlawful possession statute does not require evidence of operability concurrently with possession.

At trial, Officer Davis testified that she found a loaded semiautomatic handgun under the driver's seat of the Jeep. Officers Davis and Traverso, who testified that they are trained in handling and identifying firearms, stated that it appeared to be a real gun. Two defense witnesses testified that they saw Anderson's cousin put a gun under the seat of the Jeep. And Anderson testified that he felt a gun with a trigger under the driver's seat of the Jeep shortly before police stopped him. In addition, this gun, displaying a serial number, was admitted as an exhibit at trial. Thus, there is substantial evidence from which a rational trier of fact could conclude that this gun was a "real gun" and not a "gun-like object" Nonetheless, the record contains no direct evidence that the gun was immediately operational when it was removed from Anderson's possession or control by the police.

Although it is clear that our Legislature had in mind a "real gun" and not a gun-like replica or toy, it is not crystal clear from the language of the felon-in-possession statute itself whether the phrase "may be fired" refers to the time of manufacture, the time of the defendant's possession, a time not too remote from the time of defendant's possession, or some other past, present, or future time when a projectile or projectiles might be fired from it by an explosive such as gunpowder.

Interpreting "deadly weapon" under RCW 9.95.040,[3] our Supreme Court held that "the State must prove the presence of a deadly weapon *in fact* in order to permit a special finding that the defendant was armed with a deadly weapon. A defendant's penalty cannot be enhanced if the evidence establishes only that he was armed with a gun-like, but nondeadly, object." *State v. Pam*, 98 Wn.2d 748, 753, 659 P.2d 454 (1983), *overruled on other grounds by State v. Brown*, 111 Wn.2d 124, 761 P.2d 588 (1988). Then the *Pam* court stated that, under former RCW 9.41.025,[4] "the State must prove the presence of a 'firearm' which is defined under WPIC 2.10 as a 'weapon from which a projectile may be fired by an explosive such as gun powder.' A gun-like object incapable of being fired is not a 'firearm' under this definition." *Id.* at 753-54.[5]

After *Pam*,[6] Washington courts found the evidence to be sufficient to find that the defendant was armed with a

---

[3]In the "Indeterminate Sentences" chapter, this statute defines the "words 'deadly weapon,' as used in [the section addressing duration of confinement] include, but are not limited to, any instrument known as a blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas." RCW 9.95.040 (inapplicable to felonies committed on or after July 1, 1984).

[4]Former RCW 9.41.025, which imposed mandatory enhanced sentences for felonies committed while in the possession of a firearm, did not contain a definition for "firearm." Effective July 1, 1984, this section was repealed by LAWS OF 1981, ch 137, § 38; LAWS OF 1982, ch. 10, § 17; LAWS OF 1983, ch. 2, § 20; and LAWS OF 1984, ch. 209, § 31. Former RCW 9.41.010(1), which was in effect at the time, stated: " 'Short firearm' or 'pistol' as used in this chapter means any firearm with a barrel less than twelve inches in length."

[5]The *Pam* court quoted former WPIC 2.10. The current WPIC's do not define "firearm." *See* WPIC 2.06-2.07. Under the current WPIC's, "Deadly weapon means any [explosive] [firearm, whether loaded or unloaded] [weapon, device, instrument, substance or article [including a vehicle]], which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily injury." WPIC 2.06 (brackets in original). And the "term 'deadly weapon' includes any firearm, whether loaded or not." WPIC 2.06.01. Further, current WPIC 2.07.02 explains that for purposes of a special verdict, "[a] pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded."

[6]In 1994, our Legislature essentially adopted former WPIC 2.10's definition of "firearm"—upon which the *Pam* court relied—as RCW 9.41.010(1), the statute at

deadly weapon based only on the victims' testimony that the defendant had threatened them with a real gun, even though no weapon was ever recovered or introduced into evidence. *See State v. Bowman*, 36 Wn. App. 798, 803, 678 P.2d 1273 (1984) (concluding evidence was sufficient to support finding of a "real gun"); *State v. Mathe*, 35 Wn. App. 572, 581-82, 668 P.2d 599 (1983) ("[A] rational trier of fact could have found beyond a reasonable doubt that Mathe used a real and operable gun during the two robberies."), *aff'd*, 102 Wn.2d 537, 688 P.2d 859 (1984).

In *State v. Sullivan*, 47 Wn. App. 81, 733 P.2d 598 (1987) the court concluded that an unloaded weapon is a deadly weapon for purposes of the post-SRA deadly weapon enhancement statute because " 'an unloaded gun can easily be loaded during the commission of a crime, and, thus, a defendant armed with an unloaded gun has the same potential for violence as a defendant armed with a loaded gun.' " *Id.* at 84 (quoting *State v. Hattori*, 19 Wn. App. 74, 82, 573 P.2d 829 (1978)). Under the Sentencing Reform Act of 1981, RCW 9.94A.125 defines a deadly weapon as "an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." The statute goes on to list instruments that are included per se in the term deadly weapon:

> Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than three inches, any razor with an unguarded blade, any metal pipe or bar used or intended to be used as a club, any explosive, and any weapon containing poisonous or injurious gas.

RCW 9.94A.125.

This same list was contained in former RCW 9.95.040(2), the statute providing for mandatory minimum terms under the Indeterminate Sentences chapter.

issue in the present case. LAWS OF 1994, 1st. Spec. Sess. ch. 7, § 401 (codified at RCW 9.41.010(1)).

Although we do not believe that the term "firearm" necessarily need be defined in exactly the same way for purposes of different statutes, we agree with the *Hattori* court that where similar legislative purposes led to the adoption of the different statutes, they should be interpreted consistently whenever possible. *Hattori*, 19 Wn. App. at 82. Thus, the *Hattori* court concluded that the word "firearm," as used in both the deadly weapon sentencing statute then applicable and the firearm statute then applicable, included unloaded guns.

An unloaded firearm is not immediately operable, i.e., even if otherwise in working order the weapon must first be loaded before "a projectile or projectiles may be fired by an explosive such as gunpowder." RCW 9.41.010(1). Similarly, a "real gun" with the firing pin broken or temporarily removed, or with a trigger guard in place, or that is temporarily disassembled, is not immediately operable, but can be placed in working order in a relatively short time. It begs reason to assume that our Legislature intended to allow convicted felons to possess firearms so long as they are unloaded, or so long as they are temporarily in disrepair, or so long as they are temporarily disassembled, or so long as for any other reason they are not immediately operable.

In *State v. Faust*, 93 Wn. App. 373, 967 P.2d 1284, 1289 (1998), Division Two of this Court construed "firearm" for purposes of RCW 9.41.010 to include a handgun that consistently misfired when tested by police. That the gun was incapable of being fired during the commission of the crime due to a mechanical defect did not alter the fact that the weapon in question was a real gun rather than a gun-like object or toy gun in that the potential to inflict violence also exists with a malfunctioning gun: "If an unloaded gun can be loaded, a malfunctioning gun can be fixed." *Faust*, 93 Wn. App. at 381.

In the present case, where two experienced police officers testified that the gun they found in the Jeep was loaded, and appeared to be a real gun, and where the gun displayed

a serial number and was admitted as an exhibit at trial, any rational trier of fact could have found that the handgun in the present case was a "firearm" under RCW 9.41.010(1), i.e., a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder, beyond a reasonable doubt. That the weapon was loaded leads to an inference that it was either operable or could be made operable within a reasonable period of time—why else would it have been loaded? Accordingly, we conclude that the State presented sufficient evidence to support Anderson's conviction.

The trial court having properly instructed the jury with respect to unwitting possession, and there being sufficient evidence to support Anderson's conviction, we affirm.

A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.

AGID and BECKER, JJ., concur.

Review granted at 138 Wn.2d 1007 (1999).