# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69159-7-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JEANETTE MARIE HOPKINS, | ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: January 20, 2015 |

SPEARMAN, C.J. — Jeanette Hopkins challenges her conviction of

possession of stolen property in the second degree based on alleged violations

of the public trial right and her due process right to be present at all critical

stages, as well as prosecutorial misconduct. We affirm.

## FACTS

In the spring of 2011, the Skagit County Sheriff's Office began

investigating the theft of a pickup truck and cargo trailer. Verbatim Report of

Proceedings (VRP)[1] at 24. Jeanette Hopkins became a person of interest in the

investigation after the truck's owner reported that he had seen the vehicle parked

in Hopkins' driveway. In response to this tip, Deputy Brad Holmes went to speak

---

[1] There are three volumes of transcripts in this case. Transcripts of proceedings from voir dire on 7/2/13 are referred to herein as "(voir dire) VRP." Transcripts of proceedings from sentencing on 8/3/13 are referred to herein as "(sentencing) VRP." Transcripts from trial on 7/2/13 and 7/3/13 are referred to simply as "VRP."

with Hopkins and see if he could observe stolen property on or near her property. Deputy Holmes specifically asked if the missing cargo trailer was present on her property. Hopkins told the officer it was not. While there, Deputy Holmes took a picture of the property, which depicted what he identified as a trailer or cargo container that was partially obscured by a makeshift structure housing it.

The next day, the deputy discovered an abandoned cargo trailer on the side of the road not far from Hopkins' property. The trailer had been recently painted red, was missing the wheels on the driver's side, and had its vehicle information number scraped off. Further investigation confirmed that the trailer was the one previously reported stolen. The deputy also observed drag marks and deep gouges in the pavement leading from the trailer into a field adjacent to Hopkins' property.

Hopkins was charged with possession of stolen property in the second degree based on her alleged possession of the trailer. The case was set for jury trial. At the close of voir dire, the trial court convened a sidebar conference, during which counsel made peremptory challenges via a printed form. The trial court did not subsequently announce the results of the peremptory challenge process. Instead, the court filed the form, which indicated the names and numbers of all the prospective jurors, the two jurors removed by peremptory challenge (jurors 3 and 5), the party who challenged each juror (the defense), and the order in which each challenge was exercised. Neither party objected to this procedure.

Hopkins testified on her own behalf at trial. She testified that the stolen truck had been brought to her property by a friend of her husband's. She also

2

stated that she owned a red horse trailer, different from the stolen trailer at issue, which she housed on her property. Hopkins claimed her horse trailer was still on her property at the time of trial, though this testimony was not corroborated. Hopkins denied ever having seen the stolen trailer or the drag marks in the road near her property. She also denied being contacted by the sheriff's deputy regarding the stolen truck and trailer prior to charges being filed against her.

On cross examination, the State asked Hopkins whether, at the time of the alleged crime, she had a methamphetamine abuse problem. Defense counsel made an objection, which was sustained. The State rephrased, asking: "Were you using that day?" VRP at 97. The defense objected again, to which the trial court responded: "Sustained--overruled." Id. Hopkins did not answer the question. The State then asked Hopkins if she had previously been convicted of two crimes of dishonesty; she admitted she had.

At the close of evidence, the State argued that much of Hopkins' defense had been based on speculation. The State also noted that many points made by the defense were either unsupported by the record or non-dispositive of Hopkins' guilt, characterizing these points as "red herring." VRP at 158-61.

The jury convicted Hopkins as charged. She timely appeals.

## DISCUSSION

### Peremptory Challenge Procedure

Hopkins challenges her conviction, arguing for the first time on appeal that the trial court's decision to take peremptory challenges via a written "secret ballot" form completed by counsel in a sidebar conference violated the public trial

right and Hopkins' due process right to be present at all critical stages. Neither claim has been preserved for review.

Under RAP 2.5(a)(3), appellate courts will review an alleged manifest error affecting a constitutional right even if not raised in the trial court. State v. Sublett, 176 Wn.2d 58, 78, 292 P.3d 715 (2012). But here, Hopkins cannot establish manifest error with respect to either the public trial right or the right to be present.

A criminal defendant has a right to a public trial under the state and federal constitutions. State v. Lormor, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011) (citing U.S. Const. amend. VI; Wash. Const. art. I, § 22). The public has a complementary right to open proceedings. Id. at 91. In Washington, the public trial right is safeguarded by the requirement that, before ordering closure of the courtroom, a trial judge must conduct an inquiry on the record as to each of the five factors announced in State v. Bone-Club,128 Wn.2d 254, 258-60, 906 P.2d 325 (1995).[2]

Hopkins argues that the trial court closed the courtroom when it adopted a written procedure for exercising peremptory challenges at sidebar without first conducting a Bone-Club analysis on the record. We disagree. The exercise of peremptory challenges via the written form in this case was not a "closure" of the courtroom. State v. Filitaula, 339 P.3d 221, 2014 WL 6896867, at *2 (2014)

---

[2] Prior to closure, the court must weigh the following factors: (1) the proponent must show a compelling interest for closure and, when closure is based on a right other than an accused's right to a fair trial, a serious and imminent threat to that compelling interest; (2) anyone present when the closure motion is made must be given an opportunity to object to the closure; (3) the proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests; (4) the court must weigh the competing interests of the proponent of closure and the public; and (5) the order must be no broader in its application or duration than necessary to serve its purpose.

(finding no implication of the public trial right where the trial court used a written peremptory challenge procedure identical to the one here); see also, State v. Marks, 339 P.3d 196, 198, 2014 WL 6778304, at *1-2 (2014) ("the exercise of cause or peremptory challenges is not part of voir dire" and, therefore, "does not implicate the public trial right"); State v. Dunn, 180 Wn. App. 570, 575, 321 P.3d 1283, 1285 (2014); State v. Love, 176 Wn. App. 911, 920, 309 P.3d 1209 (2013) (holding that public trial right does not attach to the exercise of for cause and peremptory challenges during jury selection). Here, the names of the prospective jurors who were removed by peremptory challenges, as well as the order in which each challenge was made and the party who made it were recorded by the court. The document containing this information was made part of the court record and was available for public inspection. In light of these facts, the claim of a courtroom closure is untenable and we reject it.

Hopkins correctly asserts that she had a due process right to be present at all critical stages of her trial, including voir dire. State v. Irby, 170 Wn.2d 874, 881-84, 246 P.3d 796 (2011). She contends that this right was violated because she was not at sidebar with her counsel when he exercised peremptory challenges on her behalf. The State argues that Hopkins waived this claim because she did not object to the procedure below and, because she makes no argument that she was prejudiced by the process, she cannot establish manifest error as required under RAP 2.5(a)(3). See, Sublett, 176 Wn. 2d at 78 (holding, if an alleged manifest error affecting a constitutional right is not raised in the trial court, relief will only be granted upon a showing of actual prejudice resulting from the error). We agree with the State.

5

Love, 176 Wn. App. at 920-21 is instructive on this issue. In that case, the defendant was present beside his attorney during juror questioning and apparently had the opportunity to consult with counsel and provide input on whether to challenge any of the prospective jurors. Id. at 921. Following voir dire, the trial court convened a sidebar conference, which included only the judge and counsel, during which the court heard argument regarding for cause challenges. Id. Noting that the defendant had succeeded in his cause challenges at the sidebar conference, we concluded that "he simply [could not] show how he was prejudiced by the procedure. His due process claim therefore [was] not manifest error." Id.

Similarly, in this case the proceeding at issue occurred in open court, with Hopkins presumably seated next to her attorney at counsel table, after having observed the questioning of prospective jurors. Under these circumstances, it is evident that Hopkins had a full and fair opportunity to consult with her attorney regarding the exercise of peremptory challenges prior to the sidebar conference.[3] After voir dire, Hopkins' attorney exercised two peremptory challenges at a sidebar conference. Neither challenge was objected to. Having succeeded in her challenges at the sidebar conference, Hopkins, like the defendant in Love,

---

[3] Thus, the present case is unlike Irby, in which our Supreme Court expressly noted that the timing of email communications regarding jury selection between the trial judge and counsel made it unlikely that defense counsel consulted with the defendant regarding their contents:

> As noted above, Irby was not present during this discussion because he was in his jail cell. Furthermore, because the trial judge sent his initial e-mail at 1:02 p.m., and Irby's attorneys replied at 1:53 p.m., it is unlikely that the attorneys spoke to Irby about the email in the interim.

Irby, 170 Wn.2d at 884.

cannot show that she was prejudiced by the challenge procedure in this case. Consequently, her due process claim is not manifest error not subject to review pursuant to RAP 2.5(a)(3).

Moreover, even if review were proper, we recently held that the exercise of peremptory challenges as done in this case did not constitute a courtroom closure. Filitaula, noted at 339 P.3d 221. In that case, as here, the written form on which the parties' challenges were recorded showed the names and numbers of the excused jurors, the order in which the challenges were made, and the identity of the party exercising the challenge. The document was filed in the court record and was available for public inspection. Under these circumstances, we reject the argument that the procedure adopted by the trial court was a violation of the right to a public trial.

## Prosecutorial Misconduct

Hopkins also contends that her conviction should be overturned because prosecutorial misconduct denied her a fair trial. We disagree.

In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012) (citing State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced under one of two standards of review. Id. at 760. If the defendant objected at trial, he must show that the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. Id. (citation omitted). If the defendant did not object, he is deemed to have waived any error unless the

7

prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. Id. at 760-61 (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)). In that case, the defendant must show that: (1) no curative instruction would have obviated any prejudicial effect on the jury; and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. Id. (citing Thorgerson, 172 Wn.2d at 445)). In assessing whether the alleged misconduct requires reversal, we review the improper statements in the context of the entire case. Thorgerson, 172 Wn.2d at 443 (citing State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

Hopkins argues that the State's questions regarding her use of methamphetamine were improper because they violated the trial court's ruling on her motion in limine, which prohibited "evidence or reference to prior law enforcement contacts, charges, convictions, or other bad acts." VRP at 17. We agree. The State's questioning was clearly intended to elicit an admission that Hopkins was a drug user. This evidence was not probative of Hopkins' character for truthfulness and not proper impeachment evidence. See, State v. Stockton, 91 Wn. App. 35, 42, 955 P.2d 805 (1998). Rather, it was improperly directed at Hopkins' prior misconduct and, therefore, violated both the rules of evidence and the trial court's ruling. Id.; ER 404(b), ER 608.

But Hopkins fails to show resulting prejudice that would justify reversal. Although evidence of illegal drug use has the potential to stigmatize a defendant in the eyes of a jury, in this case, there was overwhelming evidence implicating Hopkins, independent of the alleged illegal drug use. There was testimony from

8

the owner of the stolen truck that he had seen the vehicle parked in Hopkins' driveway. There was testimony from a sheriff's deputy regarding drag marks leading from the stolen trailer to a field adjacent to Hopkin's property. Both the victim and the investigating deputy identified a structure which looked, at least substantially, like the victim's recovered trailer. And, while Hopkins claimed to have no knowledge of the stolen truck or the fact that the trailer had been stolen, her testimony was uncorroborated and she admitted on the stand that she had been convicted of two crimes of dishonesty, giving the jury ample reason to doubt her. Based on the totality of the evidence, the two unanswered questions regarding Hopkins' drug use were not prejudicial.

Hopkins also challenges the State's characterization of portions of defense counsel's closing argument as "red herring." We disagree that these remarks were improper.

A prosecutor's argument to the jury must be confined to the law stated in the jury instructions. State v. Walker, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). But, "the prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." Russell, 125 Wn.2d at 87 (citing United States v. Hiett, 581 F.2d 1199, 1204 (5th Cir. 1978)). It is not misconduct for a prosecutor to argue merely that the evidence does not support the defense theory. Id.

During closing arguments in this case, the defense asserted, among other things, that the State's evidence regarding the market value of the trailer was insufficient and that the structure identified by the victim and sheriff's deputy in the deputy's photos of Hopkins' property was Hopkins' own horse trailer. The

9

State's characterization of these arguments as "red herring" was a fair response to the defense argument, suggesting only that insufficient evidence supported the defense positions. Defense counsel also noted the lack of fingerprint evidence linking Hopkins to the stolen trailer. The State's comment that this fact was "[a]nother big red herring" because it was not probative of Hopkins' guilt or innocence is consistent with the law of this case as set forth in the to-convict instruction.[4] VRP at 162. It was not improper.

Even if the State's "red herring" comments had been improper, Hopkins' misconduct claim fails because she cannot show prejudice. Hopkins makes no argument as to why an instruction would not have cured any prejudice in this case and the record supports none. And, in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions

---

[4] The jury was instructed as follows:

To convict the defendant of the crime of possessing stolen property in the second degree, each of the following five elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about August 10, 2011, the defendant knowingly received, retained, possessed, concealed or disposed of stolen property;
(2) That the defendant acted with knowledge that the property had been stolen;
(3) That the defendant withheld or appropriated the property to the use of someone other than the true owner or person entitled thereto;
(4) That the stolen property exceeded $750 in value, and
(5) That any of these acts occurred in the State of Washington.

If you find from the evidence that the elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of the elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers at 24.

given to the jury, the State's "red herring" remarks simply did not have a substantial likelihood of affecting the verdict.

*Affirmed.*

Spelman, C.J.

WE CONCUR:

Trickey, J

Dwyer