# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,     )

    )    No. 75164-6-I

             Respondent,    )

    )    DIVISION ONE

    v.     )

    )

RONALD WAFFORD,     )    PUBLISHED OPINION

    )

             Appellant.    )    FILED: <u>May 15, 2017</u>

SPEARMAN, J. — It is well settled in Washington that a party that introduces evidence of questionable admissibility runs the risk of opening the door to the admission of otherwise inadmissible evidence by an opposing party. It is less clear whether the rule is triggered only by the introduction of questionable evidence or whether a statement by counsel regarding such evidence is sufficient. In this case, appellant Ronald Wafford contends the trial court erred when it found the door was opened by a comment made by his counsel during her opening statement and admitted evidence it had previously ruled inadmissible. We conclude that it is within the trial court's discretion whether the door has been opened to otherwise inadmissible evidence by statements of counsel and, if so, what, if any, remedy is appropriate. Here, the trial court did not abuse its discretion when it found the door had been opened and admitted into

evidence a portion of the video recording it had previously excluded. We affirm Wafford's conviction.

## FACTS

Several times over the course of her childhood, T.H. accused Wafford, her stepfather, of inappropriate sexual contact. In 2005, T.H.'s mother, Mariyah Wafford, heard that eight-year-old T.H. had told a friend that something inappropriate happened with Wafford. After reporting to police, Mariyah took T.H. to be interviewed at Dawson Place, the Snohomish County Center for Child Advocacy. There, a child forensic interview specialist talked with T.H., and their conversation was video-recorded. T.H. did not make a specific disclosure of sexual abuse by Wafford, though she did appear to nod affirmatively in response to one question about inappropriate sexual contact. The State did not investigate further or charge Wafford.

Seven years later, in 2012, T.H. again told a friend that Wafford sexually abused her. The friend then passed along the allegations to police, who interviewed her at school. Upset about the investigation, T.H. told investigators that there was nothing going on. No charges were filed.

Two years later, in 2014, T.H. was seventeen years old. She was having problems at home and at school, where she failed to regularly attend classes. T.H. started seeing a counselor at school to talk about her anger. Eventually, T.H. disclosed to her counselor that Wafford sexually abused her. The matter was reported to police. T.H. was removed from her home and began living with

her biological father in Mount Vernon. During the investigation, T.H.'s older sister, H.F., also made allegations that she had been sexually abused by Wafford.

The State charged Wafford with crimes against both T.H. and H.F. As to T.H., Wafford was charged with first degree rape of a child, first degree child molestation, and first degree incest. As to H.F., Wafford was charged with first degree rape of a child, first degree child molestation, and third degree child molestation.

Before trial, the court conducted a child hearsay hearing at which it concluded that the 2005 recorded interview of T.H. was inadmissible. The court reasoned that because T.H. never actually described an act of sexual contact, her statements were not admissible under the child hearsay statute.

In opening statements, the State began by telling the jury, "[i]t was a close call, but he got away with it the first time. At age eight, [T.H.] was confused, anxious, uncertain, and either unable or unwilling to articulate what it was that her stepfather had been doing to her." Verbatim Report of Proceedings (VRP) at 426. The prosecutor went on to say that "[e]ventually [T.H.] ended up talking to a police officer, talking to an interviewer, asking her questions about what was happening." VRP at 428. He told the jury that it would hear testimony from two people involved in that initial investigation. During defense counsel's opening statement, she referred explicitly to the video of T.H.'s interview: "[Mariyah] brought both [H.F.] and [T.H.] to Dawson Place in 2005. Nova Robinson interviewed on video [T.H.] … [b]ut [T.H.] denied that anything was happening to her." VRP at 444. The State did not object.

After opening remarks, the State requested that the court admit the interview video that had been previously excluded. The State argued that when defense counsel mentioned the video, she opened the door to its admission. The State contended that the jury must see the video to rebut the characterization that T.H. denied abuse in her interview. The court found that defense counsel opened the door and admitted a portion of the video.

At trial, Wafford successfully moved for a directed verdict on counts five (first degree molestation of H.F.) and six (third degree molestation of H.F.) for insufficient evidence. The jury found Wafford guilty of first degree child molestation of T.H., but was unable to reach a verdict on the remaining counts. The court sentenced Wafford to 68 months in prison. Wafford appeals.

## DISCUSSION

### Opening the Door to Recorded Interview

Wafford argues that the trial court erred when it found that his attorney's opening statements opened the door to the admission of T.H.'s 2005 recorded interview. He primarily contends that, as a matter of law, comments made by counsel during opening statements cannot open the door to otherwise inadmissible evidence.

The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned absent a manifest abuse of discretion. State v. Bourgeois, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997). An abuse of discretion exists "[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons. . . ." State v. Stenson, 132 Wn.2d

4

668, 701, 940 P.2d 1239 (1997). The range of discretionary choices is a question of law and the judge abuses his or her discretion if the discretionary decision is contrary to law. State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

A party may open the door to otherwise inadmissible evidence by introducing evidence that must be rebutted in order to preserve fairness and determine the truth. State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

> (1) [A] party who introduces evidence of questionable admissibility may open the door to rebuttal with evidence that would otherwise be inadmissible, and (2) a party who is the first to raise a particular subject at trial may open the door to evidence offered to explain, clarify, or contradict the party's evidence.

State v. Jones, 144 Wn. App. 284, 298, 183 P.3d 307 (2008) (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 66-67 (5th ed.2007).

Wafford argues that only the introduction of evidence can open the door to otherwise inadmissible evidence. He contends that because a comment made during an opening statement is not evidence, it cannot open the door. Wafford relies on State v. Whelchel, 115 Wn.2d 708, 801 P.2d 948 (1990) to support his argument, but the case is not helpful. In Whelchel, the trial court found a recording admissible prior to trial. The State did not discuss the recording in opening statements, but defense counsel did. When the recording was ruled inadmissible on appeal, the supreme court rejected the State's argument that defense counsel opened the door by discussing the recording in opening statements. Id. at 728. Given that the evidence in question was admissible when

the parties made opening statements, Whelchel does not stand for the broad proposition that opening statements cannot open the door.

Wafford also relies on Corson v. Corson, 46 Wn.2d 611, 283 P.2d 673 (1955), but to the extent the case is relevant, it does not support his argument. In Corson, the trial court held a show cause hearing to determine whether a father should be held in contempt for failure to pay child support as previously ordered. In the course of the hearing, the trial court admitted evidence of the mother's pre-divorce conduct. On appeal, the supreme court concluded that the trial court erred in admitting the evidence. It rejected the father's argument that the evidence was necessary to rebut remarks made by the mother in opening statements. The court found that even if the mother had introduced the subject of pre-divorce conduct in her opening statement, it did not justify receiving further testimony on the issue because the trial court had other more appropriate means of addressing the matter. The court stated:

> In making inadmissible and prejudicial remarks in the opening statement for [the mother], counsel should have been stopped by the court, advised to desist, and told that such matters would be disregarded by the court. The same disposition should have been made of the efforts at rebuttal by counsel for [the father].

Corson, 46 Wn.2d at 616-17.

Our reading of Corson is that in the context of a bench proceeding, a trial court abuses its discretion by admitting irrelevant and prejudicial evidence in response to an improper opening statement when other more effective means of ensuring a fair proceeding are available. The case does not hold, as Wafford

6

suggests, that opening statements can never open the door to otherwise inadmissible evidence.

To resolve whether opening statements can open the door, we find State v. Rupe, 101 Wn.2d 664, 683 P.2d 571 (1984) to be more on point and thus more persuasive. In Rupe, defense counsel suggested in opening statement that the victim's husband, rather than the defendant, was responsible for her murder and that of one other person. As a result of those remarks, the State moved to admit an emotional recording of the victim's husband calling 911. The trial court admitted the recording to rebut the inference that the victim's husband was culpable. Id. at 687.

On appeal, Rupe contended that the trial court erred in admitting the evidence because the probative value of the recording was far outweighed by its prejudicial effect. The supreme court acknowledged the recording's prejudicial effect, noting that it was "without a doubt, an extremely emotional experience to listen to th[e] tape." Id. at 686. But it held that the trial court did not abuse its discretion in admitting the tape. Id. at 688. The court agreed with the State that because the defense theory, as asserted in opening statement, was that the husband was responsible for the murders, the recording was relevant and admissible to rebut that assertion. While the supreme court did not expressly rely on the open door doctrine in reaching this result, Rupe supports the conclusion that a trial court does not abuse its discretion by admitting otherwise irrelevant evidence in response to remarks made during opening statement.

7

We decline to adopt Wafford's suggested rule that as a matter of law, comments made during opening statements cannot open the door. First, such a rule would be contrary to the general rule permitting trial courts the discretion to determine the admissibility of evidence. Second, whether the issue arises from the statement of counsel or the testimony of a witness is immaterial to the question faced by the trial judge: to what extent, if any, has the statement compromised the fairness of the trial and what, if any, response is appropriate. In answering this question, the trial judge should have a range of options at his or her disposal. A judge may admonish the jury to disregard certain statements or reiterate its instruction that opening statements are not evidence. The judge may allow testimony about otherwise inadmissible evidence, while continuing to exclude the exhibit or document which contains the evidence. Or the judge may find that a party has opened the door to otherwise inadmissible evidence. The appropriate response is that, which in the discretion of the trial judge, best restores fairness to the proceeding.

Wafford next argues that even if comments made during opening statement can open the door, the trial court abused its discretion in finding that counsel did so in this case. He contends that counsel merely previewed the testimony of two witnesses, which he argues, did not make the video recording of T.H.'s interview relevant. But the trial court reasoned that counsel opened the door because she

> referred to the video that was made from the interview, and you said that [T.H.] denied anything was happening to her, and you said that twice.

8

> It would be fundamentally unfair to leave it like that. I said the State could not use this item of evidence, and then you told the jury what was inside the evidence. So things have changed, and the door is now open.

VRP at 452. We agree. Prior to trial, Wafford successfully excluded the recording. In its opening, the State discussed the interview, but did not reference a video. Then in her opening, Wafford's counsel told the jury that there was a video, and that in it T.H. denied the abuse. Thus, Wafford was the first to identify the existence of the recording, which he went on to characterize as containing a denial of the abuse. Because these statements made continued exclusion of the recording unfair to the State, the trial court did not abuse its discretion in finding that counsel's opening statements opened the door to its admission.

Next, Wafford argues that the trial court erred by admitting the recording because it was inadmissible hearsay and therefore incompetent evidence. The State contends that the recording was not hearsay because it rebutted a claim of recent fabrication. The State is correct. A statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is...consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . ." ER 801(d)(1)(ii). In opening, Wafford theorized that T.H. recently fabricated the sexual abuse in order to live with her boyfriend. The interview recorded almost ten years earlier tends to rebut this theory. In it, T.H. indicated that Wafford acted sexually toward her by slightly nodding her head in response to the question: "Has anybody ever shown you any parts of their body that it's not okay for kids to

see?" Exhibit 3 at 17. An affirmation of sexual conduct is consistent with her testimony and is thus not hearsay under ER 801(d)(1).

The trial court did not err by admitting the video of T.H.'s 2005 interview. [1]

Ineffective Assistance of Counsel

Wafford argues that his attorney provided ineffective assistance of counsel because she failed to request a limiting instruction for the video of T.H.'s 2005 interview. He contends that his counsel should have sought a jury instruction that would limit consideration of the recording as evidence rebutting her characterization of the video as a denial of sexual abuse. The State argues that this was a legitimate trial tactic because in closing statements, counsel uses the videos to argue for the truth of the matter asserted: whether Wafford abused T.H.

We review an ineffective assistance of counsel claim de novo. State v. White, 80 Wn. App. 406, 410, 907 P.2d 310 (1995). The defendant has the burden of establishing ineffective assistance of counsel. State v. Humphries, 181 Wn.2d 708, 719-720, 336 P.3d 1121 (2014). The performance of an attorney "is not deficient if it can be considered a legitimate trial tactic." Id. at 720 (citing State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)).

Here, defense counsel's failure to request a limiting instruction can be considered a legitimate trial tactic. During closing arguments, counsel used the 2005 recording in defense of her client. She argued that T.H.'s responses to the

---

[1] We also disagree with Wafford's contention that hearsay cannot be admitted even when a party opens the door to it. A party may open the door to evidence that is otherwise inadmissible, subject to the trial court's discretion. Haysom v. Coleman Lantern Co. Inc., 89 Wn.2d 474, 485-86, 573 P.2d 785 (1978) (superseded on other grounds by statute as stated in Braaten v. Saberhagen Holdings, 165 Wn.2d 373, 198 P.3d 493 (2008)); State v. Tarman, 27 Wn. App. 645, 651, 621 P.2d 737 (1980).

10

interviewer's questions about molestation "were emphatically no." VRP at 1636.

A limiting instruction would have prevented counsel from arguing that the

recording proved that there was no molestation. Thus, the failure to request a

limiting instruction was not deficient performance by Wafford's attorney.

Affirmed.

WE CONCUR:

Spearman, J.

Cox, J.

Dwyer, J.

11