## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

RANDALL H. ROGERS,

Appellant.

No. 77111-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 3, 2019

LEACH, J. — Randall Rogers appeals his convictions for two counts of child molestation. He claims testimony elicited by the State "opened the door" to excluded "other suspect evidence."[1] Because this testimony did not unfairly touch on the excluded evidence, the trial court did not abuse its discretion by concluding that this testimony did not open the door. We affirm.

---

[1] In addition to alleging the trial court abused its discretion by denying admission of "other suspect evidence," Rogers's pro se notice of appeal alleges that the trial court abused its discretion by denying his request for a special sex offender sentencing alternative (SSOSA) and claims that the State engaged in prosecutorial misconduct. After filing the notice, Rogers retained counsel. In his opening brief, Rogers raises only the issue of "other suspect evidence." Because Rogers's brief does not address the denial of the SSOSA or the allegation of prosecutorial misconduct, the panel need not review these issues.

BACKGROUND

In July 2014, E.R. told her father, Lance Rogers, that her grandfather, Randall Rogers, had touched her inappropriately.[2] After this disclosure, Lance and E.R.'s mother and Lance's ex-wife, Kendra Etzkorn, decided to take E.R. to a therapist.

Etzkorn took E.R. to talk to Katherine Doyle, a marriage and family therapist. After meeting with E.R., Doyle, as a mandatory reporter, reported E.R.'s description of Rogers's two years of inappropriate touching to Child Protective Services (CPS). CPS referred the case to law enforcement. Sergeant Christine Elias took statements from Etzkorn and Lance. After Shana MacLeod, a King County child interview specialist, interviewed E.R., the State charged Rogers with two counts of child molestation in the first degree.

Before trial, Rogers asked the trial court to admit evidence of Lance's 20-year-old alleged assault of his stepsister, Annie, and her friend when Lance was a teenager and they were preteens. The trial court granted the State's request to exclude this evidence because no evidence linked Lance to E.R.'s allegations.

E.R. testified at trial. She stated that Rogers touched her inappropriately on a number of occasions when they were watching TV together and she was positioned on his lap with her back to his chest. She described instances when Rogers put his hands under her pants and rubbed her vagina. At least once, he tried to insert his finger into

---

[2] For purposes of clarity, we refer to Lance Rogers as Lance and Randall Rogers as Rogers. Following the information charging Rogers, we refer to the child victim as E.R.

her vagina. He stopped when she squeezed her legs together because it hurt. E.R.'s testimony was consistent with what she told Lance, Etzkorn, Doyle, and Macleod.

Lance testified about E.R.'s initial conversation with him disclosing Rogers's inappropriate touching. After E.R. asked him if she could sleep in his bed, Lance reminded her that some kinds of touching were inappropriate. And he told her that this type of touching was not okay even if by a family member. E.R. then stopped talking, turned away from him, and curled into a fetal position. After Lance asked a few more questions, she said that Rogers had given her "massages . . . where [her] panties are."

Etzkorn testified that E.R. told her that Rogers had rubbed her over her panties more than five times over at least a twelve-month period. Both Etzkorn and Doyle reported that E.R. said that Rogers had tried to insert his finger into her vagina at least once but stopped when she said "ouch." Doyle testified that E.R. "said her grandfather had touched her over her panties when either they would be at his house watching TV" or, one time, when he came into the bedroom.

Rogers testified that he never touched E.R. inappropriately. Rogers and Lisa Rogers, his wife, testified that he was not interested in spending time alone with his children or grandchildren until they were adults.[3] They admitted that E.R. had been to their house numerous times but denied that Rogers was ever alone with E.R. except when tucking her in, briefly, at night. Rogers also testified that E.R. was clingy and not getting enough attention from her parents. He claimed that E.R. acted normally toward him when he saw her immediately after she told her father about the touching. But he

---

[3] For purposes of clarity, we refer to Lisa Rogers as Lisa.

stated that Lance exhibited conflicting behavior toward him after E.R. told him about the touching.

On cross-examination, the prosecutor asked Rogers about E.R.'s and Lance's behavior. She asked Rogers, "[C]ouldn't you understand that [for Lance, E.R.'s statements] would lead to a lot of conflicted feelings about how to interact with someone you love in that situation?" Rogers responded, "No, I don't understand that." Then the following exchange occurred:

> Q: And in talking about [E.R.'s] own interactions with you and then not seeing anything abnormal, what's your expertise on children who have been victims or have alleged sexual abuse? Are you an expert?
>
> [Defense Counsel]: Go ahead and answer the question.
>
> A: Just the experience I had with my daughter when she was younger.
>
> Q: And have you received any formal training?
>
> A: No.
>
> Q: Are you a child forensic interviewer?
>
> A: I'm not.

When defense counsel then objected, the court excused the jury. Rogers's trial counsel claimed that the State's line of questioning was inappropriate because Rogers did not need to be an expert to describe his observations of E.R.'s behavior. The court agreed that the line of questioning should be limited but concluded that Rogers's testimony that E.R. "was starved for attention [was] something that one often hears about from an expert counselor." The court expressed concern that striking the

exchange might bring more attention to the issue than allowing the State to ask one more clearly worded question and moving on.

Rogers's counsel responded that the State had opened the door to the evidence about Lance's alleged acts of abuse by asking whether Rogers had any expertise in child-victims behavior. The court disagreed because this was "not a case in which other suspect evidence [was] being presented." The State proposed asking one final question, and Rogers's counsel responded, "Fair enough." When the jury returned, the State asked Rogers, "[Y]ou are not an expert on child psychology, is that correct?" Rogers answered, "That's correct."

When the prosecutor cross-examined Lisa, she asked whether Lisa thought Lance "had a good relationship with Annie and Tom," his siblings. Lisa answered, "He picked on Tom a lot when he was little, and I—I don't know how to answer the Annie question." She stated that there was sibling rivalry but confirmed that they "were all a relatively close family."

The jury found Rogers guilty as charged. Rogers appeals.

ANALYSIS

Rogers claims that the trial court should have admitted the excluded evidence about Lance because the State opened the door with its cross-examination of Rogers and Lisa.

A trial court has discretion to admit otherwise inadmissible evidence when a witness "opens the door" to this evidence during testimony "and the evidence is relevant

to some issue at trial."[4] This rule preserves fairness.[5] In particular, it allows courts to guard against one party gaining an unfair advantage by introducing evidence about an excluded subject while the other party remains barred from doing so.[6] "But a passing reference to a prohibited topic during direct does not open the door for cross-examination about prior misconduct."[7]

We review a trial court's application of the "open-door" rule for an abuse of discretion.[8] A trial court abuses its discretion when it makes a manifestly unreasonable decision or exercises its discretion on untenable grounds or for untenable reasons.[9] The party claiming abuse has the burden of proving abuse of discretion.[10]

Rogers cites to State v. Wafford[11] to support his assertion that testimony here opened the door. But Wafford does not help Rogers. There, the trial court admitted a previously excluded video of the child-victim's statement because defense counsel referred to it during opening statements, which risked misleading the jury as to its contents.[12] Here, in contrast, neither Rogers, nor Lisa, nor any other witness referred to

---

[4] State v. Stockton, 91 Wn. App. 35, 40, 955 P.2d 805 (1998) (citing State v. Tarman, 27 Wn. App. 645, 650-52, 621 P.2d 737 (1980)).

[5] State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

[6] Gefeller, 76 Wn.2d at 455.

[7] Stockton, 91 Wn. App. at 40 (defendant's testimony that he thought men were trying to sell him drugs did not "open the door" to evidence of his prior drug convictions); State v. Avendano-Lopez, 79 Wn. App. 706, 714-15, 904 P.2d 324 (1995) (defendant's "passing reference to his release from jail did not open the floodgates to questions about prior heroin sales").

[8] State v. Wilson, 20 Wn. App. 592, 594, 581 P.2d 592 (1978).

[9] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

[10] State v. Hentz, 32 Wn. App. 186, 190, 647 P.2d 39 (1982), rev'd on other grounds, 99 Wn.2d 538, 663 P.2d 476 (1983).

[11] 199 Wn. App. 32, 35-36, 397 P.3d 926, review denied, 189 Wn.2d 1014 (2017).

[12] Wafford, 199 Wn. App. at 40.

the excluded testimony directly or indirectly. So their testimony does not include even a "passing reference" to the excluded evidence.[13]

Rogers contends that the State violated the trial court's pretrial exclusion of testimony about Lance's alleged molestation of his stepsister and her friend, by asking him if he was an expert "on children who have been victims or have alleged sexual abuse." He asserts this questioning produced his response that his experience was limited to that "with [his] daughter when she was younger." He maintains this answer "created a false impression" in the minds of the jurors, so "fairness required the trial court to allow" the excluded testimony about Lance.

But the State asked its questions in the context of Rogers's statements that E.R. was clingy after her parents' divorce and that she had acted normally around him after she had told her father that Rogers had touched her inappropriately. And the State credibly explained that its questions impeached Rogers's testimony about E.R.'s behavior. In addition, the State's final clarifying question and Rogers's answer that he was not an expert focused the purpose of these questions.

Rogers also points to Lisa's answer to the State's question about how Lance treated Annie and Tom. He claims Lisa's statement that Lance "picked on Tom a lot when he was little, and I—I don't know how to answer the Annie question" opened the door to the excluded evidence because it shows that Lance molested Annie when they were young. But Lisa's testimony is not sufficiently related to the excluded evidence to

---

[13] See Avendano-Lopez, 79 Wn. App. at 714-15.

have opened the door. And no other testimony supports an inference that Lance molested E.R.

We conclude that the identified testimony did not "open the door" to the excluded evidence.

If the trial court did err in applying the "open the door" rule, the error was harmless.

If a trial court abuses its discretion by excluding evidence, we provide relief only if the error caused harm.[14] An error is not harmless if "within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[15]

Rogers contends that the State's line of questioning prejudiced him. He suggests that the jury could have interpreted his statement that his experience observing the behavior of children who had been abused was "[j]ust the experience I had with my daughter when she was younger" as meaning that he molested his daughter. Also, he claims that his "hesitation, [his] looking toward defense counsel helplessly . . . , and his answer impacted his credibility in the eyes of the jury."[16]

But E.R.'s testimony and her admitted interview support the jury's verdict. In addition, Lance, Etzkorn, and Doyle testified that E.R. reported consistent descriptions of Rogers's molestations. Given the strength of the State's case against Rogers, he does not show that the outcome of the trial would have been different if he had not

---

[14] State v. Korum, 157 Wn.2d 614, 647, 141 P.3d 13 (2006).
[15] State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981).
[16] This description of Rogers's hesitancy and his look "toward defense counsel" does not appear in the record of proceedings.

stated that his only experience with child abuse was his daughter's experience when she was younger.[17] So any error by the trial court was harmless.

## CONCLUSION

We affirm. Because Rogers fails to show that testimony during trial "opened the door" to excluded evidence, the trial court did not abuse its discretion by refusing to admit it.

*Leach, J.*

WE CONCUR:

*Dwyer, J.*                    *Appelwick, C.J.*

---

[17] Rogers does not identify as prejudicial Lisa's statement that she did not know how to answer "the Annie question."