# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>         v.<br><br>KYLE J. BROUSSARD,<br><br>                Appellant. | No. 83056-2-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

HAZELRIGG, J. — Kyle Broussard appeals a jury conviction for rape in the third degree. As the trial court erroneously excluded the testimony of Broussard's former roommate, resulting in prejudice to the defense, reversal is required.

FACTS

In 2014, Kyle Broussard and K.K. met each other at school and engaged in a sexual relationship which continued until the summer of 2015, when K.K. transferred to a university out of state. They maintained contact and resumed their physical relationship when K.K. returned to Washington for the summer in 2016. In November 2017, K.K. returned again to visit her family and ex-boyfriend. K.K.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

arranged to spend her last night in town with Broussard and for him to take her to the airport in the morning. Although K.K.'s ex-boyfriend was "not super thrilled" about her going to see Broussard, he felt "it would have been inappropriate for [him] to try to encourage her in her friendships." He was unaware that K.K. and Broussard had been sexually involved in the past. Broussard was unaware that K.K. was rekindling a relationship with her ex.

As planned, on November 5, 2017, Broussard picked up K.K. from the ferry, they went to dinner, and returned to Broussard's house for the night. According to K.K.'s testimony, once they arrived at his house Broussard "showed [her] around a little bit, the kitchen and living room space, and then walked [her] down to where he was staying." She stated that "[n]o one was there when he was showing [her] around" and she "didn't see any of his roommates." However, K.K. also explained that she "[knew] that there were probably one or two other bedrooms . . . but [she] didn't] remember exactly where they were." Once settled in Broussard's bedroom, K.K. said that he repeatedly touched her and continued to do so even after she told him to stop. Ultimately, K.K. explained that she raised her voice and yelled at Broussard to stop, but he proceeded to hold her down and rape her. According to Broussard's testimony, he and K.K. split a bottle of wine after dinner, played a card game, and had consensual sex.

The following morning, Broussard drove K.K. to the airport. A few days after K.K. arrived back at school, she told her ex-boyfriend that Broussard had raped her. Shortly after that conversation, K.K. reported the incident to local police, who referred the case to authorities in Washington. The allegations were investigated

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83056-2-I/3

and, roughly a year and a half later, Broussard was charged with rape in the third degree. A trial was conducted in July 2021, and the jury found Broussard guilty as charged. Broussard timely appealed.

ANALYSIS

Broussard avers the trial court deprived him of his "right to present a defense" by excluding the testimony of his former roommate, Jean-Marc Betreaud. While Broussard also assigns error to the jury selection process, the trial court's "coercive" jury instructions, and prosecutorial misconduct in closing argument, we need not reach those issues because the trial court erred in refusing to admit Betreaud's testimony, which was prejudicial to the defense and is dispositive on review.

The Sixth Amendment to the United States Constitution and article I, section 22 of our state constitution guarantee an accused person "(1) the right to present testimony in one's defense; and (2) the right to confront and cross-examine adverse witnesses." State v. Hudlow, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983) (citation omitted). The right "to call witnesses in one's own behalf ha[s] long been recognized as essential to due process." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045, 35 L. Ed. 2d 297 (1973). In "plain terms," the Supreme Court described the defendant's right to present such testimony as "the right to present a defense." Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923, 18 L. Ed. 2d 1019 (1967). Rather than creating a new right, however, the Court explained this right is rooted in due process. Id.

- 3 -

The right to compel and present witnesses is far from absolute; neither irrelevant nor inadmissible evidence are covered by the "right to present a defense." State v. Strizheus, 163 Wn. App. 820, 830, 262 P.3d 100 (2011). If "an absent witness's testimony is merely speculative," the accused's right to offer that witness's testimony "must yield to 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" State v. Cayetano-Jaimes, 190 Wn. App. 286, 296, 359 P.3d 919 (2015) (quoting State v. Finch, 137 Wn.2d 792, 825, 975 P.2d 967 (1999)). A court may properly "'exclude evidence that is repetitive . . ., only marginally relevant[,] or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" State v. Jennings, 199 Wn.2d 53, 63, 502 P.3d 1255 (2022) (some alterations in original) (internal quotation marks omitted) (quoting Holmes v. South Carolina, 547 U.S. 319, 326-27, 126 S. Ct. 1272, 164 L. Ed. 2d 503 (2006)). So long as the "defendant has an opportunity to present his theory of the case, the exclusion of some aspects of the defendant's proffered evidence will not amount to a violation of the defendant's constitutional rights." State v. Ritchie, __ Wn. App. 2d. __, 520 P.3d 1105, 1116 (2022).

I.      Standard of Review

This court applies a two-step standard of review when considering whether an evidentiary decision violated a defendant's due process "right to present a defense." State v. Arndt, 194 Wn.2d 784, 797, 453 P.3d 696 (2019). First, we review the evidentiary decision under an abuse of discretion standard. Jennings, 199 Wn.2d at 58. When the evidentiary ruling constitutes an abuse of discretion,

- 4 -

which results in prejudice, the analysis ends here. Id. at 59. However, if the ruling was either within the trial court's discretion, or an abuse of discretion but harmless, the review proceeds to step two, reaching the constitutional question. Id.

Second, the court "consider[s] de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense." Id. at 58. As our Supreme Court explained, "At its core, the constitutional right to present a defense ensures the defendant has an opportunity to defend against the State's accusations." Id. at 66. Because this right is not absolute, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." Arndt, 194 Wn.2d at 812.

II.      Exclusion of Betreaud's Testimony

Broussard argues that the trial court erred in denying both his pretrial motion to admit Betreaud's testimony and his motion for reconsideration after the State opened the door. We agree as to both points. Because these errors were prejudicial to Broussard, Jennings is clear we need not reach the second step of this review by addressing the constitutional question.

To be admissible, evidence must be relevant. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold is very low; "Even minimally relevant evidence is admissible." State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Relevant evidence may, however, be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

No. 83056-2-I/6

or misleading the jury." ER 403. We review the trial court's determinations as to the relevance and admissibility of evidence under a manifest abuse of discretion standard. State v. Luvene, 127 Wn.2d 690, 706-7, 903 P.2d 960 (1995). "'A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" Arndt, 194 Wn.2d at 799 (quoting State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)). A decision that is either contrary to law or based on an incorrect application of an evidentiary rule is an abuse of discretion. State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001).

A.     Pretrial Motion to Admit Betreaud's Testimony

Broussard moved to admit the testimony from Betreaud before trial and the State opposed, primarily based on its claim that disclosure of the witness wasn't timely. Broussard anticipated that Betreaud's testimony would confirm that (1) he lived in the same house as Broussard at the time of the alleged rape, (2) his room was in close proximity to Broussard's room, (3) he could hear "pretty well" into Broussard's room, and (4) he never heard a woman yelling from Broussard's room. However, as Betreaud could not remember the exact night of the incident, his testimony would be limited to explaining that he "was there almost all the time in the evenings" and did not hear anything when he was there. Betreaud also asserted he never saw K.K. Although the court stated that such testimony was of questionable relevance, it reserved ruling on the matter until the State could interview Betreaud.

After the interview, the State moved to exclude Betreaud as a witness, reiterating its initial basis for opposition regarding untimely disclosure of the

- 6 -

witness, and further arguing that any testimony Betreaud could offer would be "purely speculative" as he did not know whether he was home on the night of the incident. In response, Broussard noted that while Betreaud could not remember the exact night of the incident, Betreaud had said in the interview that he was home in the evenings "about 99 percent of the time," which he further indicated was not a "figure of speech" as "he was there in the evenings nearly always." Betreaud stated he never heard a woman scream or yell in Broussard's room. Broussard argued that the evidence was relevant as Betreaud was likely home on the night of the incident and his testimony countered K.K.'s claim that she yelled at Broussard before she was raped. The court granted the State's motion to exclude Betreaud, determining that the testimony was unreliable as the witness had "no foundation to offer relevant testimony." Further, the court concluded that the testimony would invite the jury "to engage in pure speculation" and "raises the possibility of confusion."

While our standard of review provides great deference to the trial court's evidentiary rulings, it does not immunize them. The ruling here was an abuse of discretion. Under ER 602, Betreaud's testimony was admissible so long as Broussard laid a foundation "sufficient to support a finding that the witness has personal knowledge of the matter." The personal knowledge requirement only bars the witness "if, as a matter of law, no trier of fact could reasonably find that the witness had firsthand knowledge." State v. Vaughn, 101 Wn.2d 604, 611-12, 682 P.2d 878 (1984). Here, a trier of fact could have reasonably found Betreaud to have sufficient firsthand knowledge of the matter as he lived in the room directly

No. 83056-2-I/8

above Broussard during the relevant time period, he could hear into Broussard's room, he was home in the evenings "about 99 percent of the time," and he never heard a woman scream or yell. In fact, it is difficult for this panel to imagine a scenario where additional information would be required to lay a proper evidentiary foundation for testimony based on one's lived experience and direct perceptions of their own residence.[1] Although Betreaud was not entirely positive he was home on the night of the incident, his degree of certainty, like that of eye witnesses in cases resting on questions of identification, "affects only the weight of the testimony and not its admissibility." State v. Gosby, 85 Wn.2d 758, 760, 539 P.2d 680 (1975).

Further, to the extent the trial court also rooted this ruling in concerns about relevance and potential prejudice, such reasoning is untenable. Neither ER 401 nor 403 support the exclusion of Betreaud's testimony. First, it was relevant as it cast doubt on K.K.'s allegation that she yelled at Broussard to stop on the night in question, and supported Broussard's contention that the two had consensual sex. Second, Betreaud's testimony was neither speculative nor complicated. The jury could have considered his testimony, made a credibility determination about him as a witness and then, if they found him credible, decided whether his assertion that he was home most evenings and heard nothing like the incident K.K. described was sufficient to create a reasonable doubt. Far from sowing confusion

---

[1] Unfortunately, we are left to continue to ponder this question as the State did not provide any answer when presented with this very inquiry at oral argument. Wash. Court of Appeals oral argument, State of Washington v. Kyle Broussard, No. 83056-2-I (Jan. 26, 2023), at 14 min., 18 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2023011363/?eventID=2023011363.

- 8 -

or calling for speculation, this testimony would have simply required the jury to engage in the same step-by-step analysis undertaken in multiple deliberation rooms across this state each week. Accordingly, the probative value of his testimony was in no way substantially outweighed by the possibility of confusion and speculation by the jury.

Because of the interrelated nature of the two exclusionary rulings on this testimony, before considering whether the error was harmless, we first analyze the court's denial of Broussard's second attempt to admit Betreaud's testimony.

B.      Motion for Reconsideration of Admissibility Ruling

Broussard asserts that the State opened the door to Betreaud's testimony during opening statements and the trial court erred in refusing to reconsider its initial ruling excluding Betreaud's testimony. Though we have determined the trial court erred on the initial ruling and the evidence should have been admitted pursuant to the pretrial motion by the defense, the trial court's subsequent ruling on Betreaud's testimony was also an abuse of discretion. We delineate the following error in order to demonstrate how it compounded the prejudice to Broussard that resulted from the initial erroneous ruling, which then factors into our harmless error analysis.

"A party may open the door to otherwise inadmissible evidence by introducing evidence that must be rebutted in order to preserve fairness and determine the truth." State v. Wafford, 199 Wn. App. 32, 36-37, 397 P.3d 926 (2017). Additionally, "'a party who is the first to raise a particular subject at trial may open the door to evidence offered to explain, clarify, or contradict the party's

No. 83056-2-I/10

evidence.'" Id. (internal quotation marks omitted) (quoting State v. Jones, 144 Wn. App. 284, 298, 183 P.3d 307 (2008)).

During opening statements, the State contended that K.K. repeatedly pleaded with Broussard to stop on the night of the incident. According to the State, Broussard ignored K.K.'s pleas and raped her "in the privacy of his own apartment after he ensured that there were no witnesses in his apartment."[2] (Emphasis added.) The State further alleged that K.K. raised her voice and ultimately "yelled stop" when Broussard penetrated her.

At the conclusion of the first day of trial, Broussard raised the issue of whether the prosecutor had opened the door to Betreaud's testimony by alleging that Broussard had made sure that no one was home on the evening of the incident. As Betreaud's testimony would rebut the State's assertion, Broussard requested that the court reconsider its decision excluding Betreaud's testimony. The State objected, arguing that Broussard's objection was untimely and that an opening statement is not evidence. The trial court agreed with the State on both points and denied Broussard's request for reconsideration, concluding that the objection was "untimely at this point. And opening statement is not evidence, and without evidence, the door is not opened." Both of these bases for the trial court's ruling are directly contradicted by binding case law.

_____

[2] The State's response brief asserts Broussard mischaracterizes its opening statement, citing Report of Proceedings (RP) 784-85, and proceeds to present argument responding to that portion of the record. However, Broussard's brief correctly reflects the State's opening contained in the trial transcript; the assertion at issue in this assignment of error is found at RP 781 as cited in Broussard's opening brief.

- 10 -

No. 83056-2-I/11

As this court clearly explained in Wafford, comments made during opening statement can open the door to otherwise inadmissible evidence. 199 Wn. App. at 39. Further, in order to reach that primary issue on appeal, we rejected the State's argument that Wafford's non-contemporaneous objection to the challenged comments was untimely and thus prevented review. Id. at 35-36. An abuse of discretion occurs when the trial court "'takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law.'" Arndt, 194 Wn.2d at 799 (quoting Lord, 161 Wn.2d at 284). The trial court's decision was based on legally incorrect grounds, and, therefore, was an abuse of discretion. See Neal, 144 Wn.2d at 609.

C.    Harmless Error

Broussard argues that the exclusion of Betreaud's testimony "loaded the deck" against him and prejudiced his ability to defend against the State's charges. According to Broussard, the erroneous exclusion of this witness, who would have rebutted comments the State made in opening as well as K.K.'s testimony concerning the night in question, violated his constitutional rights and requires reversal. We agree.[3]

As the trial court's evidentiary errors were "not of constitutional magnitude," we apply the nonconstitutional harmless error standard to determine whether the errors require reversal. State v. Jackson, 102 Wn.2d 689, 695, 689 P.2d 76 (1984);

---

[3] The State does not argue that the error was harmless. Rather, in briefing, it merely asserts that this challenge is meritless and then only engages in analysis under the abuse of discretion standard.

No. 83056-2-I/12

State v. Barry, 183 Wn.2d 297, 303, 352 P.3d 161 (2015).[4]   Under the nonconstitutional standard, the "error is not prejudicial unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected."  State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

Here, there is a reasonable probability that the outcome of trial would have been different had Betreaud been allowed to testify.  The prosecutor's assertion in opening statements that Broussard "ensured that there were no witnesses in his apartment" rendered Betreaud's testimony even more relevant to rebut this added nuance to the State's theory of the case.  The prosecutor's claim in this regard certainly presents a prejudicial suggestion of premeditation or predation by Broussard.[5]  The exclusion of Betreaud's testimony to rebut this assertion ensured that Broussard was not able to even challenge this claim because there was no evidence before the jury from which to argue.

Further, the exclusionary ruling limited the information available to the jury with regard to its credibility determinations, which was the foundation of Broussard's denial defense.  This was a case that hinged entirely on witness

---

[4] In recent unpublished opinions, this court has similarly applied the nonconstitutional harmless error standard in the context of the Arndt and Jennings tests.  See State v. Bozeman, No. 83055-4-I, at 11-12 (Wash. Ct. App. Feb. 27, 2023) (unpublished) (applying nonconstitutional harmless error analysis, concluding trial court's abuse of discretion was not harmless, and reversing conviction without reaching the constitutional question); see also State v. Alexander, No. 82703-1-I, at 5 (Wash. Ct. App. Jan. 30, 2023) (unpublished) (applying nonconstitutional harmless error review, holding that the trial court's evidentiary error was prejudicial, and reversing without addressing the constitutional question).

While unpublished opinions by this court "have no precedential value and are not binding on any court," they "may be accorded such persuasive value as the court deems appropriate." GR 14.1(a).

[5] Notably, on cross examination, K.K. confirmed that she did not actually know whether Broussard's roommates were home on the day in question.

- 12 -

credibility and Betreaud was the only impeachment witness available to Broussard. He would have provided testimony based on his firsthand knowledge that contradicted K.K.'s assertions and directly refuted the State's subtle, but clear, accusation of planning by Broussard in its opening presentation of the case. Accordingly, we conclude that these errors were not harmless.

Broussard has satisfied the first portion of the test under <u>Arndt</u> and <u>Jennings</u>, demonstrating that the evidentiary rulings deprived him of his due process rights at trial because they were both an abuse of discretion and prejudicial to the accused. Accordingly, we end our analysis here[6] and reverse.

WE CONCUR:

---

[6] <u>Jennings</u>, 199 Wn.2d at 59.