**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 87678-3-I |
| JONATHAN MONTGOMERY, f/k/a NATHANIEL MCCASLAND,[1] | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

MANN, J. — Jonathan Montgomery was convicted by a jury of child molestation in the first degree. In this personal restraint petition (PRP), Montgomery asks this court to vacate his conviction based on the introduction of irrelevant, highly prejudicial evidence and ineffective assistance of counsel. We disagree and deny the petition.

I

Montgomery was convicted by a jury of child molestation in the first degree. State v. McCasland, No. 50370-1-II, slip op. at 1 (Wash. Ct. App. Feb. 26, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050370-1-II%20Unpublished%20Opinion.pdf. The underlying facts were articulated in the opinion on Montgomery's direct appeal:

---

[1] At the time of his conviction, petitioner's name was Nathaniel McCasland. Petitioner has since legally changed his name to Jonathan Montgomery and provided this court with a copy of the order changing name. Accordingly, we have changed the caption to reflect the name change.

At trial, witnesses testified to the following relevant facts. D.M. was in the bathroom with McCasland, and he was dressing her for the day when she saw McCasland's "private parts." D.M. could not open the door because McCasland closed and locked it. McCasland told her not to tell anyone what he did and that he was trying to keep what happened a secret. McCasland had her hold and stroke his privates. McCasland said, " 'This feels good.' "

McCasland denied exposing himself to D.M. But McCasland admitted that he showed D.M. his privates after D.M. asked to see them. McCasland says he did not know why he let D.M. see his privates. He said that D.M. "reached out [and] grabbed [my] penis and pulled on it." He "pulled [D.M.] away and told her not to [pull on his penis 'b]ecause that's what we do to make it feel good.' "

McCasland, No. 50370-1-II, slip op. at 2 (alterations in original) (citations omitted).

Montgomery testified in his own defense. Montgomery testified that he "didn't think there was no harm in showing" his penis to D.M. He further testified that he thought it was okay to allow D.M. to see and touch his penis because he was "a safe person for her."

Following Montgomery's direct examination, the State argued that Montgomery had opened the door to evidence about the counseling he received following his earlier Oregon conviction for sodomy in the first degree. After hearing argument from both attorneys, the trial court ruled that any reference to Montgomery's prior conviction should be excluded but that the State could question Montgomery about the counseling, as it was highly probative of intent and sexual gratification. The State indicated that it would sanitize the question by asking whether Montgomery had undergone counseling concerning appropriate behaviors around children and if so, whether that counseling covered sexual behavior around children. Montgomery was present for the argument,

ruling, and discussion of the sanitized versions of the questions to be asked, and was provided headphones for ease of listening.

On cross-examination, the State asked Montgomery if he thought that allowing D.M. to touch his penis was appropriate. Montgomery answered that he did not know whether it was appropriate. The prosecutor next questioned Montgomery as follows:

> Q. Okay. Now, Mr. McCasland, you had been to counseling related to appropriate behavior with children before, correct?
> A. No, that is not correct.
> Q. Mr. McCasland, you had been to counseling related to sexual behavior around children before; is that not correct?
> A. That is not specifically correct.

The court then excused the jury for the parties to address the issue.

After discussing the questioning with his client off the record, defense counsel explained that at the time Montgomery attended counseling, there was no component addressing children specifically. The prosecuting attorney and the court then discussed how to best phrase the question to more accurately reflect the program without eliciting the prior conviction. During this discussion, Montgomery interjected, "I'm trying to answer it as honestly as possible without negating my Fifth Amendment right to not choke my own dang self out." The court advised Montgomery, "You've waived your Fifth Amendment privilege by taking the stand." Defense counsel added, "Yeah, just so you know that."

When cross-examination resumed, the prosecuting attorney rephrased his question to Montgomery:

> Q. Okay. But before this incident, before [D.M.] came to visit you, you had actually been to counseling specifically about appropriate sexual behaviors, correct?

A. Yes, ma'am.

Defense counsel did not ask any questions about the counseling during redirect examination.

Montgomery was convicted as charged. McCasland, No. 50370-1-II, slip op. at 3. On appeal, Montgomery argued that the State had failed to present sufficient evidence of sexual contact because the purpose of the touching was not for sexual gratification. McCasland, No. 50370-1-II, slip op. at 7. Montgomery also argued that a prior conviction from Oregon was not equivalent to a Washington offense and that his persistent offender accountability act (POAA) sentence violated his rights to equal protection, due process, and trial by jury. McCasland, No. 50370-1-II, slip op. at 12. This court rejected all of Montgomery's arguments and affirmed his judgment and sentence. McCasland, No. 50370-1-II, slip op. at 14. The Supreme Court denied Montgomery's petition for review.

Montgomery timely filed a PRP on June 22, 2020. After receiving multiple extensions, Montgomery filed an amended PRP on April 19, 2023. Division Two of this court dismissed as untimely all claims newly raised in the amended petition, but referred the remainder for a decision on the merits.

II

A petitioner may request relief through a PRP when he or she is under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently

-4-

results in a complete miscarriage of justice.'" In re Pers. Restraint of Monschke, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)).  The petitioner must prove prejudice by a preponderance of the evidence.  In re Pers. Restraint of Lord, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).  "The petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations." Monschke, 160 Wn. App. at 488; RAP 16.7(a)(2)(i).

In evaluating PRPs, we can (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record; or (3) grant the petition without further hearing if the petitioner has proven actual prejudice or a miscarriage of justice.  In re Pers. Restraint of Stockwell, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

A

Montgomery first asserts that the trial court erred by allowing the prosecutor to ask him if he had attended counseling about appropriate sexual boundaries.  We disagree.

"We review the trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless no reasonable person would take the view adopted by the trial court."  State v. Clark, 187 Wn.2d 641, 648, 389 P.3d 462 (2017). "The trial judge has broad discretion in balancing the probative value of the evidence against its possible prejudicial impact."  State v. Rice, 48 Wn. App. 7,

11, 737 P.2d 726 (1987). Abuse of discretion is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Rice, 48 Wn. App. at 11.

Relevant evidence may not be admitted if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. "A party may open the door to otherwise inadmissible evidence by introducing evidence that must be rebutted in order to preserve fairness and determine the truth." State v. Wafford, 199 Wn. App. 32, 36-37, 397 P.3d 926 (2017) (citing State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969)). Here, the trial court determined that evidence of Montgomery's prior conviction was too prejudicial to be admitted. However, the court determined that evidence of the counseling Montgomery underwent following his prior conviction was admissible after Montgomery opened the door through his testimony on direct examination that he didn't see any harm in showing his penis to D.M. and that he allowed her to touch it because he was a "safe person." The trial court reasoned that the evidence was relevant because "it's probative of his intent and his knowledge on how to behave around children," and intent and sexual gratification were the primary issues in the case. The court further reasoned that the probative value of the evidence was not outweighed by the danger of unfair prejudice because the proposed question was sanitized to remove any reference to the prior conviction. The trial court's well-reasoned decision to permit the question asked does not constitute an abuse of discretion.[2]

[2] Montgomery also argues that the trial court erred by failing to instruct the jury to disregard the first version of the counseling question posed by the prosecutor. Because the trial

Montgomery nonetheless asserts that he did not open the door because there was not enough information about the content of the counseling for the court to correctly weigh the probative value of the evidence against its prejudicial effect. The facts in this matter demonstrate otherwise. On direct examination, Montgomery testified that he did not know whether it was normal to allow a child to touch their father's penis and believed it was okay to let D.M. do so because he was "a safe person for her." The State was entitled to rebut this testimony with evidence that Montgomery's explanation was not credible. Montgomery was required to enroll in sex offender treatment following his conviction in Oregon for sodomy in the first degree. The victim in that case was a young child related to Montgomery. Furthermore, Montgomery himself was a minor at the time of the offense and being ordered to attend sex offender treatment should have educated him that it is not appropriate for children to engage in sexual touching. The trial court acted well within its discretion to permit the State to ask Montgomery if he had attended counseling regarding appropriate sexual behavior.

B

Montgomery next asserts that he was deprived of effective assistance of counsel because his trial attorney did not adequately advise him of the consequences of testifying on his own behalf. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective

---

court did not abuse its discretion in permitting the prosecutor to ask Montgomery about the counseling he received, it also did not err by not instructing the jury to disregard the question.

-7-

assistance of counsel. U.S. Const. amend. VI; Const. art. I § 22.  To claim ineffective assistance of counsel, the petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  When a petitioner complains of the ineffectiveness of counsel's assistance, they must show that counsel's representation fell below an objective standard of reasonableness.  Strickland, 466 U.S. at 687-88.

Montgomery asserts that his trial counsel was ineffective because counsel failed to adequately advise him of the consequences of choosing to testify on his own behalf.  The evidence Montgomery presents in support of this claim is only counsel's statement on the record "Yeah, just so you know that," after the trial court advised him that he had waived his Fifth Amendment privilege by testifying. While this statement does not reflect favorably on counsel, we cannot conclude that this one sentence alone constitutes evidence sufficient to warrant a reference hearing.  Montgomery did not provide a declaration outlining the conversation he had with defense counsel before deciding to testify.  And although Montgomery submitted a declaration from his trial counsel, that declaration concerns his conversation with a juror and neglects to address Montgomery's ineffective assistance claim.  Because Montgomery "may not rely solely on conclusory allegations," Monschke, 160 Wn. App. at 488, Montgomery fails to satisfy his burden of proof.

Montgomery additionally claims that his counsel was ineffective for advising him to answer "yes" to the prosecutor's question about whether he

received counseling about appropriate sexual behavior and by not simultaneously objecting to the question. In particular, Montgomery asserts that the question did not accurately reflect the scope of the program in which he participated and thus presented false information to the jury. To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate "the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). The record demonstrates that counsel previously argued extensively against the introduction of any evidence about prior counseling. By the time the prosecutor cross-examined Montgomery, the trial court had made it clear that evidence about counseling would be admitted. Further, as was discussed on the record, had Montgomery continued to answer "no" to the prosecutor's questions about the counseling he received, the prosecutor would have been entitled to ask even more prejudicial questions about preventing relapse of sexually deviant behavior. Thus, defense counsel had a legitimate strategic reason not to continue arguing over the precise nature of the counseling Montgomery received following his sodomy conviction. Montgomery's claim of ineffective assistance therefore fails on the first part of the Strickland test.

Montgomery also asserts that his appellate counsel was ineffective for failing to raise all possible issues in his direct appeal. "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance, however." In re Pers. Restraint of Lord, 123 Wn.2d 296, 314, 868 P.2d 835 (1994). Rather, to prevail on a claim for ineffective assistance of appellate counsel, the petitioner

must demonstrate "that the legal issue which appellate counsel failed to raise had merit and that they were actually prejudiced by the failure to raise or adequately raise the issue." In re Pers. Restraint of Maxfield, 133 Wn.2d 332, 344, 945 P.2d 196 (1997) (citing Lord, 123 Wn.2d at 314). Because Montgomery does not show any meritorious issue that appellate counsel failed to raise, his claim of ineffective assistance necessary fails.

We deny Montgomery's PRP.

_____ Mann, J.

WE CONCUR:

_____, ACJ    _____ Diaz, J.