**FILED**
**NOVEMBER 26, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39492-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD S. HOUGH, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Richard Hough appeals his conviction for the second degree murder of Erika Kienas. We affirm.

FACTS

On May 15, 2021, Richard Hough shot and killed Erika Kienas moments after a road rage incident. Ms. Kienas and Mr. Hough were passengers in their respective cars when the Kienas vehicle cut off the Hough vehicle. The Hough vehicle followed the Kienas vehicle for several blocks, until both came to a stop at the intersection of Francis Avenue and Addison Street. Ms. Kienas and Mr. Hough then got out and began arguing.

The dispute ended when Mr. Hough pulled out his pistol and shot Ms. Kienas in the chest. These facts are, broadly, what both parties agree happened that day. But the specifics vary significantly.

By Mr. Hough's account, he was in the car with his mother and brother when the Kienas vehicle swerved into their lane of travel. The Houghs had safety concerns and decided to follow the car and obtain its license plate number. At the intersection of Francis and Addison, they gave up on trying to get the license plate. But as they tried to go around the Kienas vehicle, they were prevented from getting past. Ms. Kienas got out and approached the Hough vehicle, making aggressive hand movements. At this point Mr. Hough got out of his car, in an effort to deescalate the situation. After a brief interaction, both Mr. Hough and Ms. Kienas began to return to their vehicles. But Ms. Kienas reapproached Mr. Hough and said, "'I'm going to f******* cut you'" while holding a shiny object Mr. Hough perceived as a knife. 5 Rep. of Proc. (RP) (Dec. 19, 2022) at 722. Mr. Hough, knowing how quickly a knife-wielding assailant can close the distance and attack, pulled his firearm and shot Ms. Kienas in self-defense.

According to the State, the Houghs were following the Kienas vehicle out of anger. The Kienas license plate was clearly visible, so there was no need for a lengthy pursuit. While the Hough vehicle was following the Keinas vehicle, Mr. Hough rolled

2

down his window, raised his middle finger, and shouted insults. At the intersection of Francis and Addison, Ms. Kienas got out of her vehicle at nearly the same time, if not slightly after, Mr. Hough. She was unarmed, and wearing an outfit that could not reasonably conceal a weapon. Mr. Hough was larger than Ms. Kienas. He had been told multiple times he looked intimidating and he was openly carrying a firearm at his side. Mr. Hough and Ms. Kienas began arguing and made aggressive gestures at each other. Within eight seconds, Mr. Hough deliberately pulled his gun on Ms. Kienas and shot her through the heart.

Mr. Hough was arrested and charged with second degree murder. At trial, he sought to introduce expert testimony from Kaery Dudenhofer, a self-defense instructor. Ms. Dudenhofer proposed discussing "ability, opportunity, jeopardy, go through furtive movements, talk about contact weapons and how quickly one can close in on you, talk about memory and perception, [and] what happens when you're in a stressful and threatening situation." 4 RP (Dec. 15, 2022) at 658. She also intended to testify as to "how rapidly critical events like this unfold, how scientifically we know from watching hundreds, if not thousands, of edged weapon attacks, that the edged weapon is kept hidden until the very second of the attack." *Id*. at 662. The State objected to Ms. Dudenhofer's testimony, arguing it would not be helpful in discerning Mr. Hough's

3

subjective understanding of the situation, particularly because he had not taken

Ms. Dudenhofer's classes.

The trial court excluded Ms. Dudenhofer's testimony, reasoning, "all the stuff

she's testifying to, he may have to testify himself: I've taken training; I've done this

training; this is what I've learned in my training; that this lunge can happen within

21 feet. All of that would have to come from his perception. If some person says that,

that doesn't mean that's what Mr. Hough was experiencing at the time." *Id*. at 671.

Mr. Hough testified at trial and explained about his training, which consisted

of some instruction on the "21-Foot Rule"[1] and regular practice with his firearm.

5 RP (Dec. 19, 2022) at 713. Mr. Hough did not claim to have ever trained with

an instructor, such as Ms. Dudenhofer.

The jury received several instructions related to self-defense. Among them was

jury instruction 18:

---

[1] The "21-Foot Rule" is a self-defense principle developed for police stating that "within 21 feet of an officer, an armed assailant could reach—and therefore potentially kill—that officer before the officer could draw from a holster and fire a pair of (hopefully) attack-stopping, center-mass shots." Tom Grieve, *What Is the 21-Foot 'Rule'?*, U.S. CONCEALED CARRY ASS'N (Sept. 16, 2023), https://www.usconcealedcarry.com/blog/rule-breaker-the-21-foot-standard-is-misunderstood/[https://perma.cc/VYY3-WWNE].

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self defense and thereupon kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self defense is not available as a defense.

Clerk's Papers at 429. Neither side objected to this instruction.

The jury returned a guilty verdict on December 20, 2022. Sentencing was originally scheduled for January 5, 2023, but was continued to January 12. The State filed a sentencing brief on December 23, 2022. On December 30, 2022, Mr. Hough requested an extension of time to file a motion for a new trial. The court granted the extension until January 10, 2023, at 5:00 p.m. Defense filed the motion about two hours late, citing initial delays receiving the trial transcript, and unavailability on the preceding weekend and Monday. The court denied the new trial motion as untimely. At the January 12 sentencing, defense counsel requested a further continuance to prepare their own sentencing brief. The court denied the continuance, but allowed defense counsel to orally argue for an exceptional sentence downward. The court sentenced Mr. Hough at the low end of the standard range.

## ANALYSIS

Mr. Hough makes four arguments on appeal: (1) defense counsel was ineffective in failing to object to an initial aggressor instruction, (2) the trial court erroneously

5

excluded testimony from the self-defense expert, (3) the trial court's errors denied

Mr. Hough the right to present a defense, and (4) the trial court erred in denying two

posttrial motions. None of these alleged errors are meritorious. We discuss each in turn.

*Failure to object to initial aggressor instruction*

Criminal defendants are guaranteed effective assistance of counsel by our state and

federal constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. A defendant

appealing a conviction on the basis of ineffective assistance of counsel bears the burden

of showing both deficient performance and prejudice. *State v. McFarland*, 127 Wn.2d

322, 334-35, 899 P.2d 1251 (1995). Failure to meet either element precludes relief. *See*

*In re Pers. Restraint of Pleasant*, 21 Wn. App. 2d 320, 326, 509 P.3d 295 (2022).

Mr. Hough claims he was deprived of his right to constitutionally effective

representation when his trial counsel failed to object to the court's initial aggressor

instruction. We disagree.

The right of self-defense generally does not apply to someone who acts as a first

aggressor. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). A trial court may

provide the jury with a first aggressor instruction in cases where "(1) the jury can

reasonably determine from the evidence that the defendant provoked the fight, (2) the

evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the

evidence shows that the defendant made the first move by drawing a weapon." *State v. Anderson*, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). The provoking conduct cannot be words alone, and must be reasonably likely to elicit a belligerent response. *State v. Sullivan*, 196 Wn. App. 277, 289-90, 383 P.3d 574 (2016).

Mr. Hough's attorney did not perform deficiently in failing to object to the initial aggressor instruction because any such objection would have been overruled. *See State v. Grott*, 195 Wn.2d 256, 274, 458 P.3d 750 (2020). The evidence at trial was at least equivocal as to who provoked the argument between Mr. Hough and Ms. Kienas. According to the State's evidence, Mr. Hough was a party to the decision to pursue the Kienas vehicle. During the pursuit, Mr. Hough directed profanities at the Kienas vehicle. When the Kienas vehicle came to a stop, Mr. Hough got out of his car at roughly the same time as Ms. Kienas. At that point, Mr. Hough had a handgun visibly holstered at his waist. Mr. Hough knew members of the public were often intimidated when viewing him openly carrying his firearm. Given these circumstances, the jury could have concluded that Mr. Hough provoked the need to act in self-defense. The court therefore properly gave the instruction.

Mr. Hough laments a first aggressor instruction improperly relieves the State of its burden of proof. This is incorrect. *Id.* at 268. A first aggressor instruction does "not

actually relieve the State of its burden of proof." *Id.* Rather, "first aggressor instructions are used to explain to the jury one way in which the State may *meet* its burden: by proving beyond a reasonable doubt that the defendant provoked the need to act in self-defense." *Id.*

*Exclusion of expert witness testimony*

Mr. Hough argues "the trial court erred by suppressing [Ms.] Dudenhofer's testimony because it was relevant and would have been helpful to the jury in understanding self-defense from [Mr.] Hough's subjective perspective." Appellant's Opening Br. at 21.[2] Our review of the trial court's decision is for abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 283, 165 P.3d 1251 (2007); *L.M. v. Hamilton*, 193 Wn.2d 113, 134, 436 P.3d 803 (2019). A trial court abuses its discretion if "'no reasonable person would take the view adopted by the trial court.'" *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001) (quoting *State v. Ellis*, 136 Wn.2d 498, 504, 963 P.2d 843 (1998)).

---

[2] Apart from a discussion of the standard of review, this sentence is the full extent of Mr. Hough's analysis of this issue. There is no discussion of how Ms. Dudenhofer's testimony would have been relevant to the specific facts of Mr. Hough's case. Arguably, Mr. Hough's briefing on the issue is insufficient to merit review. *See Schmidt v. Cornerstone Invs., Inc.,* 115 Wn.2d 148, 160, 795 P.2d 1143 (1990) ("Without adequate, cogent argument and briefing, this court should not consider an issue on appeal.").

The trial court reasonably exercised its discretion in excluding Ms. Dudenhofer's testimony as irrelevant. The use of lethal force is justified under a theory of self-defense if a reasonably prudent person in the defendant's circumstances would perceive an imminent danger of great personal injury. *See* RCW 9A.16.050. Given the lack of evidence that Mr. Hough was aware of Ms. Dudenhofer's theories regarding self-defense, her testimony was not relevant to determining whether a reasonably prudent person in Mr. Hough's circumstances would have perceived Ms. Kienas as an imminent threat.

## Right to present a defense

Mr. Hough argues the exclusion of Ms. Dudenhofer's testimony deprived him of the constitutional right to present a defense. We engage in a two-step process in assessing whether a trial court's evidentiary decision violated a defendant's constitutional right to present a defense. *State v. Broussard*, 25 Wn. App. 2d 781, 786, 525 P.3d 615 (2023). First, we review the merits of the evidentiary decision. *Id*. If the defendant can prevail on the merits, no further analysis is necessary. But if the trial court's evidentiary decision "was either within the trial court's discretion or an abuse of discretion but harmless," we will proceed to the second step, which involves a constitutional analysis. *Id*. at 786-87.

The first step of our analysis has already been resolved. As previously noted, the trial court did not err in its evidentiary ruling excluding Ms. Dudenhofer's testimony.

9

Turning to the second step, the question is whether this exclusion of evidence deprived Mr. Hough of the constitutional "'right to a fair opportunity to defend against the State's accusations.'" *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). The right to present a defense is not absolute; the defendant's need for relevant information must be weighed against the State's interest in excluding the evidence. *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019).

Mr. Hough was not deprived of his ability to present a defense. Mr. Hough was able to testify as to his subjective fear that Ms. Kienas was acting aggressively and threatened to attack him with a knife, necessitating self-defense. He presented expert testimony from his physician about his physical limitations, which could have affected his perceived ability to retreat. The trial court's evidentiary ruling had a minimal, if any, impact on Mr. Hough's ability to present his defense. At the same time, the State had a legitimate interest in keeping out evidence that might have confused the jury regarding Mr. Hough's subjective assessment of the dangers posed by Ms. Kienas. *See State v. Jennings*, 199 Wn.2d 53, 66, 502 P.3d 1255 (2022) (A defendant's right to present evidence must be weighed "against the State's interest in limiting the prejudicial effects of the evidence."). There was no violation of Mr. Hough's right to present a defense.

*Denied motions*

> *Motion for new trial*

Mr. Hough challenges the trial court's decision to deny his motion for new trial as untimely. Our review is for abuse of discretion. *See State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981).

The jury issued its guilty verdict on December 20, 2022. Under CR 59(b), Mr. Hough had 10 days in which to file a motion for a new trial. However, the court extended this deadline until January 10, 2023, at 5:00 p.m. It is undisputed that Mr. Hough failed to file his new trial motion prior to the January 10 deadline. While his submission was only two hours late, Mr. Hough failed to show excusable neglect. The trial court therefore exercised tenable discretion in rejecting the motion as untimely. *See* CR 6(b); *Clipse v. Com. Driver Servs., Inc.*, 189 Wn. App. 776, 788-89, 358 P.3d 464 (2015).

Even if the trial court should have granted a two-hour extension, Mr. Hough fails to show prejudice. *See State v. Kelly*, 32 Wn. App. 112, 114, 645 P.2d 1146 (1982) ("The decision to deny the defendant a continuance will be disturbed on appeal only upon a showing that the defendant was prejudiced."). Mr. Hough makes no argument for prejudice. And the claims contained in the new trial motion have not been asserted on

11

appeal, presumably because appellate counsel deemed them without merit. Reversal without a showing of prejudice is unwarranted.

*Motion to continue sentencing*

Mr. Hough also challenges the trial court's denial of his motion to continue sentencing. He argues the trial court should have granted additional time so defense counsel could present a sentencing memorandum, arguing for an exceptional sentence downward. Our review is for abuse of discretion. *State v. Iniguez*, 167 Wn.2d 273, 280, 217 P.3d 768 (2009).

Once again, Mr. Hough's argument fails due to lack of prejudice. *See State v. Deskins*, 180 Wn.2d 68, 82, 322 P.3d 780 (2014) (Denial of a motion to continue sentencing requires reversal only upon a showing of prejudice.). The trial court allowed defense counsel to present an oral request for an exceptional sentence downward. The court also advised the defense team they were welcome to file postsentencing briefing in the form of a motion for reconsideration, should it be deemed necessary. The defense did not file any postsentencing memoranda. And while the court denied Mr. Hough's request for an exceptional sentence downward, there is no suggestion the court's disposition was rooted in legal error. Given these circumstances, Mr. Hough has not shown he is entitled to relief on appeal.

No. 39492-1-III
*State v. Hough*

## CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.

13